[No. 15722. Department Two.   October 4, 1920.]

STIMSON TIMBER COMPANY, *Respondent*, v. MASON COUNTY, *Appellant*.[1]

TAXATION (91)—ASSESSMENT—REDUCTION OF TAX—EQUALIZATION —POWERS OF BOARD—STATUTES. An over-valuation of real estate through an excessive estimate of standing timber by the county assessor can be corrected by the board of equalization in the first instance without applying to the assessor to correct "manifest error," under Rem. Code, § 9200.

SAME (210) — ASSESSMENT — EXCESSIVENESS — EVIDENCE — SUFFICIENCY. A finding of over-valuation of timber lands is sufficiently sustained by evidence that the county cruise of saw timber thereon exceeded estimates made by several cruisers made for the owners to a much greater extent than the extreme percentage of permissible differences between cruises.

Appeal from a judgment of the superior court for Mason county, Wright, J., entered July 7, 1919, in favor of the plaintiff, in an action to cancel a tax, tried to the court. Affirmed.

[1]Reported in 192 Pac. 994.

*P. M. Troy* and *Alden C. Bayley,* for appellant.
*Reynolds, Ballinger & Hutson,* for respondent.

FULLERTON, J.—The respondent, Stimson Timber Company, owns one hundred and sixty forty-acre tracts of land situated in township twenty-three north, of range two west of the Willamette Meridian, according to the United States government surveys. The land is in Mason county, and is subject to assessment for the purpose of taxation in that county. The respondent conceived that,. for the year 1916, fifty-three of these tracts were overvalued by the assessor of the county named, and after seeking and failing to obtain relief through the county board of equalization, began this action to cancel the assessments, at the same time tendering to the county taxes on the property measured by a valuation which it deemed to be just. The county refused to accept the tender, and took issue on the allegations of the complaint. The trial resulted in a finding that thirty-eight of the fifty-three tracts were overvalued, and a decree was entered accordingly. The county appeals.

The county assessor, in making up his estimates of the value of the several tracts, took into consideration different elements. He valued the land as land without the timber, he estimated the number of piles and poles upon the land and placed a value upon them, he estimated the quantity of saw timber thereon and valued the same at a given value per thousand feet, and by aggregating these values found the total value of the land. In its complaint the respondent does not complain of the value placed upon the land as land without the timber, nor does it complain of the quantity or values of the piles and poles, nor of the value per thousand feet of the saw timber, but complains that

the quantity of saw timber estimated to be on the land was greatly in excess of the quantity actually thereon; the result being, in the final aggregate, an overvaluation of the land.

The county assessor found the quantity of timber on the land from a cruise of the timber made by the county in 1909. While the evidence was not directed towards a showing of the fact, it can be gathered from the record that the county, in the year named, caused all of the timber lands within its boundaries to be cruised. The cruise was under the general supervision of one Lewis J. Wade. He was authorized to employ, and did employ, assistant cruisers to make the actual cruise. The cruise of the township of which the lands here in question form a part was made by John T. Leahy. Leahy's cruise of the one hundred and sixty-nine forty-acre tracts therein owned by the respondent showed that there was thereon 206,000,154 feet of saw timber. This quantity of timber was accepted as correct by the chief cruiser and adopted by the county as correct on all of the tracts save the tracts in section thirty-two. On this section Leahy found the saw timber to be 44,-476,000 feet. The chief cruiser, apprehending some mistake in the cruise, caused the section to be cruised by another cruiser, going with him over the first half of the section and making a separate estimate. Finding, on completing this half, that their estimates were running practically together, he allowed the cruiser to complete the second half alone. This cruiser found a total of 28,179,000 feet of saw timber on the section, and this quantity was adopted by the chief cruiser and the county as the true quantity of saw timber on this section. On the fifty-three forty-acre tracts of which complaint is made, Leahy's cruise shows 85,326,000 feet of saw timber.

The respondents, in 1909, also caused all of their holdings in this township to be cruised. The cruise was made by one Raberge, who estimated the saw timber at 177,830,000 feet. On the fifty-three forty-acre tracts he found 59,080,000 feet of saw timber. The respondents also caused the fifty-three tracts in dispute to be cruised in 1916 by one Bryan. He reported the tracts to contain 60,340,000 feet of saw timber. A third cruise was made at the instance of the respondent by one Burnett in 1918. This cruiser omitted cruising one tract by mistake, and certain others had been cut over. He reported 51,675,000 feet of saw timber. Adding to this the number of feet Bryan found on the omitted tracts, his cruise would make the total 61,065,-000 feet.

As we have said, the trial judge allowed a reduction on thirty-eight only of the fifty-three tracts of which complaint was made. Comparing the county cruise with the cruise of each of the respondent's cruises, an over-run in quantity appears in the county cruise on each of the fifty-three tracts. The reason for allowing a reduction in part only does not appear in the record, unless it was from the following circumstances: Each of the cruisers testified that a cruise of timber is at best only an estimate of quantities, more or less close owing to the care taken by the cruiser. They testified, also, that variations in the estimates of different cruisers of from five to ten per centum were usual, and one of them testified that a variation of fifteen per centum between different cruises did not argue that either cruiser had been careless. While we have not compared the differences on each of the protested forty-acre tracts, a comparison of isolated instances seems to indicate that the trial judge disallowed a reduction on each of the tracts where the percentage did not

exceed the extreme of these permissible variations. It may be added that the differences in the estimates between the cruise made by the county and the largest cruise made by the respondent's cruisers on the tracts on which reductions were allowed exceeds forty-five per centum.

The statute (Rem. Code, § 9200) provides that the county commissioners, the county assessor, and the county treasurer shall form a board for the equalization of assessments upon property within the county. The board is given power to raise the valuation of each tract of real property which in their opinion is returned by the assessor below its true and fair value, and power to reduce the valuation on any tract which in their opinion is valued by the assessor in excess of its true or fair value. The county assessor is made the clerk of the board, with the duty of keeping an accurate record of the proceedings of the board, and of making the changes in values on the assessment rolls directed by the board of equalization. The statute further provides:

"The county assessor shall make a record of all errors in descriptions, double assessments, or manifest errors in assessment appearing on the assessment-list at the time of the extension of the rolls, and after duly verifying the same, file said record with the county board of equalization on the third Monday in November next succeeding the annual meeting of the county board of equalization. The county board of equalization shall reconvene on such day for the sole purpose of considering such errors in description, double assessments, or manifest errors appearing on the assessment-list at the time of the extension of the rolls, and shall proceed to correct the same, but said board shall have no authority to change the assessed valuation of the property of any person, or to reduce the aggregate amount of the assessed valuation of the taxable property of the county, except only in so far as the same

may be affected by the corrections ordered based on the record submitted by the county assessor." Rem. Code, § 9200.

Based upon the foregoing provisions of the statute, the appellant first contends that the respondent is without right to maintain the present action. It calls attention to the rule that an action for the reduction of an assessment will not lie until the complainant has sought and failed to obtain relief from the proper assessing officers, and contends that, in this instance, because of the nature of the complaint, the proper officer to grant relief was the county assessor and not the board of equalization. The contention is founded on the fact that the respondent does not complain of the valuation placed upon the land as land, nor of the valuation placed upon the piles and poles, nor of the valuation per thousand feet placed upon the saw timber, but complains only that the assessor returned a greater quantity of saw timber as existing upon the land than actually existed thereon, and this error, it is said, it was the duty of the assessor to correct, not the duty of the board of equalization, and hence complaint to that body alone was insufficient. But we cannot think the contention tenable. The property was valued on the assessment rolls as land, and the complaint, in its ultimate effect, was a complaint of an over assessment of the land. This it sought to have reduced, and clearly, under the express provisions of the statute, the board of equalization alone has this power, and was the proper body before whom to make complaint. It was not an error in description, nor a double assessment, nor a manifest error appearing on the assessment roll which the assessor is empowered to correct, but was an overvaluation, made, it is true, because the assessor over-estimated the quantity of

saw timber on the land, but an error nevertheless cognizable before the board of equalization.

There is nothing decisive in the case of *Simpson Logging Co. v. Chehalis County,* 80 Wash. 245, 141 Pac. 344, that is contrary to what we here decide. In that case, like the one now before us, the plaintiffs did not complain of the value per thousand feet that the assessor had placed upon the timber, but complained because the assessor had over-estimated the quantity of timber. Passing upon the case, we did say that, for the purposes of the decision, we would assume, but not decide, that "when the question is one of quantity, the same rules of law apply as when the controversy is over value"; but it was not determined that the board of equalization was not the proper body before whom to make complaint. The most that can be claimed for the case is that the question was left undetermined, and is not authority for either view.

The facts as we have hereinbefore outlined them are not in substantial dispute. They show a radical difference between the estimate of the cruiser for the county and the cruisers for the respondent as to the quantity of saw timber on all of the tracts on which the trial court allowed a reduction—a difference sufficient to warrant the relief granted by the court under the principles governing in such cases, if the cruise of the respondent is to be accepted as the correct estimate. *Northern Pac. R. Co. v. Pierce County,* 55 Wash. 108, 104 Pac. 178; *Heuston v. King County,* 90 Wash. 200, 155 Pac. 773; *Grays Harbor Const. Co. v. Grays Harbor County,* 99 Wash. 184, 168 Pac. 1138.

The remaining question therefore is, which of these cruises is entitled to the greater credence. On this question the parties have submitted extended arguments. These we shall not follow in detail. Briefly,

the appellant's contention is that the difference between the estimated quantities of timber on the protested tracts, made by the cruisers for the respondent on the one side and the appellant's cruiser on the other, can be accounted for by the fact that the county cruiser found the correct boundaries of the tracts, whereas the respondent's cruisers did not. In support of this it is pointed out that the difference between the quantity of timber found by the county cruiser on the respondent's entire holdings and the quantity found thereon by the respondent's cruiser Raberge (the only one of the cruisers who cruised its entire holdings) is close to the range of permissible differences, and that in a number of instances Raberge's cruise on a particular tract overruns the cruise of the county. But to this we think there is a conclusive answer. It is at once manifest that, if a difference in quantity appeared on a particular tract because the cruisers did not find the same or similar boundaries, an overrun would be found on the abutting or adjacent tracts. The respondent's counsel has tabulated the cruises of Raberge and of the county by separate forty-acre tracts on the respondent's entire holdings, and this tabulation shows that in only a few instances does the Raberge cruise show an excess over the county cruise on the adjacent tracts. And in these instances, with possibly one exception, the increase is but slight, while the county overrun on the protested forty is in excess of one-third in quantity.

We have not overlooked the testimony of the county cruiser, on which the appellant places much reliance, namely:

"I have checked over a considerable of my work— my field work—with Mr. Raberge's field work on this identical land in question here. In checking it over I found this difference, I found instances where there

was an overplus on one of the forties here, and that in comparing my cruise of the adjoining forty with his cruise of the adjoining forty, I would find a less amount than his. I found by the figures of the two books where one was claimed to be large, that the difference would make up on the adjoining forty. I found that sharply shown."

But the witness points out no definite instance where these conditions appear, and we have found none other than these to which we have referred.

This court is always reluctant to interfere with values placed upon property for the purposes of assessment by the county assessor. In the performance of his duties he acts in a quasi-judicial character, and the law presumes that he has performed his duty in a proper manner. This presumption, as we have repeatedly said, is liberal, and his valuations are not to be set aside except upon clear and convincing proofs of excessive overvaluation. But the taxpayer has rights also, and in this instance we are not prepared to hold that the tracts adjudged by the trial court to be excessively overvalued were not in fact so.

The judgment is affirmed.

Holcomb, C. J., Mount, Bridges, and Tolman, JJ., concur.