[No. 18195. Department Two. December 10, 1923.]

NORTHERN PACIFIC RAILWAY COMPANY *et al.*, *Appellants*, v. PIERCE COUNTY, *Respondent*.[1]

TAXATION (210)—EXCESSIVE ASSESSMENT—EVIDENCE—SUFFICIENCY. Under Rem. Comp. Stat., § 11109, providing that assessments of real property in even numbered years shall remain the same in odd numbered years, an assessment in an odd numbered year cannot be attacked as excessive after it has been judicially determined that the assessment for the previous year was correct.

SAME (210). An assessment on coal land is arbitrarily excessive and should be reduced, where high valuations were made upon lands in the immediate neighborhood of mines that had been opened up, worked and abandoned, in view of the expert evidence as to the value of undeveloped lands.

Appeal from a judgment of the superior court for Pierce county, Card, J, entered April 23, 1923, upon findings in favor of the defendant, dismissing an action to secure a reduction of taxes. Reversed.

*Geo. T. Reid, C. H. Winders, L. B. da Ponte, C. A. Murray,* and *H.. S. Griggs,* for appellants.

*J. W. Selden, F. D. Nash,* and *D. D. Schneider,* for respondent.

[1]Reported in 220 Pac. 826.

BRIDGES, J.—The purpose of this suit was to secure a reduction of taxes for the years 1921 and 1922, on large tracts of alleged coal lands, located in townships 15, 16, 17, 18 and 19, all north of range 6, east, in Pierce county. The trial court refused to give plaintiffs any relief, and they have appealed from a judgment dismissing their action. The testimony consists of several thousand pages, and a great many exhibits. To discuss it in detail would extend this opinion to an inordinate length. We can do little more than state the conclusions to which we have arrived.

Similar actions have heretofore been instituted by one or more of the appellants for the purpose of getting relief from what they have charged to be excessive valuations in past years. Probably the first suit was concerning the taxes for the years 1914 and 1915; and this court, upon appeal, for the most part sustained valuations equally as great as those involved in this suit. *Northwestern Imp. Co. v. Pierce County,* 97 Wash. 528, 167 Pac. 33. A similar suit instituted in the Federal court for the Western district of Washington concerning the taxes for the years 1918 and 1919 resulted in the denial to the landowners of any substantial relief. Later, a similar action was brought in the last named court seeking to restrain the collection of taxes on substantially the same lands for the year 1920, and again but little substantial relief was granted. This last named suit was instituted only by the appellant Northern Pacific Railway Company, and concerned only such of the lands in this suit as belonged to that company.

Under the doctrine of the case of *Simpson Logging Co. v. Chehalis County,* 91 Wash. 656, 158 Pac. 342, the appellant Northern Pacific Railway Company is not in position to question the valuation for the year

1921 so far as its lands are concerned.  In that case, after quoting § 9101, Rem. & Bal. Code, we said:

"The provisions of this section render it plain that assessments of real property made in even numbered years remain the assessments of such property in odd numbered years, . . . except [under some circumstances which are not present here], therefore, whatever the correct assessed valuation of the logging company's lands may have been for the year 1912, that would be the assessed valuation of the lands for the year 1913.  It would seem to follow as a matter of course that, when it is judicially determined that a correct assessed valuation of the logging company's lands for the years 1912 were certain amounts upon the respective tracts, those valuations necessarily became the assessed valuation of the lands for the year 1913." [See Rem. Comp. Stat., § 11109.]

The Federal court having fixed the valuation of the Northern Pacific Railway Co.'s lands in question for the year 1920, the same valuations must hold for the year 1921.  In so far as the case affects the valuations of lands of that company for the year 1922, we are called upon to review it.

It has long been the law of this jurisdiction that the courts will not set aside a tax assessment because of mere over-valuation of the property taxed, but will grant relief,

". . . from a grossly inequitable and palpably excessive over valuation of real property for taxes as constructively fraudulent, even though the assessing officers may have proceeded in good faith; and this, without regard to the action of the board of equalization." *First Thought Gold Mines v. Stevens Co.*, 91 Wash. 437, 157 Pac. 1080.

Many other cases out of this court to the same effect will be found cited in that opinion.  In *Stimson Timber Co. v. Mason Co.*, 112 Wash. 603, 192 Pac. 994, we said:

"This court is always reluctant to interfere with values placed upon property for the purposes of assessment by the county assessor. In the performance of his duties he acts in a quasi-judicial character, and the law presumes that he has performed his duty in a proper manner. This presumption, as we have repeatedly said, is liberal, and his valuations are not to be set aside except upon clear and convincing proofs of excessive overvaluation. But the taxpayer has rights also, and in this instance we are not prepared to hold that the tracts adjudged by the trial court to be excessively overvalued were not in fact so."

Respondent argues that, since in our previous decision in *Northwestern Imp. Co. v. Pierce County, supra,* we sustained valuations as great as those here under attack, it would not be consistent for us now to establish lower valuations. The situation now is materially different from what it was then. More than six years have gone by since that decision was rendered. Since that time, there have been several disastrous failures in this coal field. At that time, some of the mines which have since been abandoned were being operated. Much additional testimony, particularly for the appellants, is presented in this case. We have here the testimony of several experts who have not testified in any of the previous cases. The general business situation and condition of the country is also materially changed since that time. A reading of that opinion will show that we relied to a considerable extent upon the testimony of Professor Willis, a geological expert of considerable renown. Since the termination of that case, Professor Willis was a witness in one of the cases later tried in the Federal court, and there he materially weakened his testimony as it stood when the matter was previously before us. We, therefore, feel that we should not allow the determination made by us in the

previous case to too greatly control our views with reference to this case.

The testimony shows that there is coal in greater or less quantity throughout this so-called coal field. Such developments have heretofore been made as that it is quite definitely ascertained that, as to a part of the lands involved here, there exist coal veins which, under favorable circumstances, could probably be successfully operated. As to other of the lands involved, there has been less previous development and consequently less actual and accurate knowledge concerning the quantity and quality of the coal. In other words, there exists now as to a part of this field quite definite knowledge resulting from previous minings, but as to the remainder of the field, the knowledge is more uncertain and speculative.

The expert testimony in this case goes in all, and particularly in opposite, directions. Practically all of the experts testifying for the appellants—and there were several—contend that the coal within the lands in this suit is of no value whatever and should not be assessed for taxation purposes. On the other hand, one of the experts for the respondent places immense values on the coal, while two other experts give a somewhat lower valuation. The assessor has doubtless honestly tried to steer a middle course, and for the most part has not accepted the testimony of the expert witnesses on either side, except the one employed by him for the purpose of advising him concerning values.

The statement of appellants' witnesses that this coal is without value is probably true in the sense that it cannot at this time be profitably mined. But the coal exists, at least in part of the lands, in great quantity. The time may come when it can be successfully mined.

It unquestionably has a value. It does not seem possible that an owner of it would look upon it as worthless. We cannot, therefore, accept the view of appellants' witnesses that it has no value. On the other hand, it does not seem possible that this coal can at this time have great value. For forty or fifty years it has been known that coal existed within these lands. During that time a great many bona fide efforts have been made to mine it. All of these efforts, with the exception of probably three mines, have been unsuccessful. Some of these unsuccessful operations are those of the Carbon Hill Coal Company, in sections 10 and 12, township 18; the Northwestern Improvement Company, in sections 15 and 16, same township; the Old Fairfax, in section 26, same township; the Spiketon mine in section 15, township 19; the South Willis mine, in section 22 of the same township; the Gale Creek mine, in section 28, same township; the Melmont mine, in sections 15 and 22, township 18, and others. All of these operations have, from time to time, been abandoned, some of them since our previous decision. Many hundreds of thousands of dollars have been lost in them. It seems to us that the testimony shows very conclusively that, under present conditions, the coal within the lands here in dispute cannot be successfully mined.

On the coal within some of these lands, the assessor has placed a nominal value; on other lands, he has placed a value running from $2.50 to $8 per acre; on still other lands he has placed a value of approximately ten dollars per acre; and on still other lands he has placed a value running from $18 to $50 per acre. Being of the view that this coal is of some value, and keeping in mind the rule of law that the courts must not interfere with an assessor's estimates simply be-

cause they seem to be over valuations, we do not feel justified in interfering with any of the values here fixed by the assessor where they do not exceed approximately ten dollars per acre. Men might easily differ as to the correctness of these values. But the assessor has placed a value of $23,700 on one section; $15,000 on a little less than another section; $32,000 on still another section; $12,000 on another; $10,000 on another; $16,000 on another; and on still another $36,000; and on less than another section, something over $10,000. These high valuations are on lands which are in the immediate neighborhood of mines which have heretofore been opened up, worked and later abandoned because of inability to compete with other fields. While we feel that the coal in these lands is entitled to be valued at something more than in lands more remote, yet, when we consider that it is impossible at this time and under the present conditions to successfully mine the coal, it seems to us impossible that it can have the very extensive values placed on it by the assessor. A pretty thorough reading of the testimony and a careful examination of the exhibits, fails to convince us that there is any great difference in the value of the coal in the various lands where the assessor has placed these large values. Without intending to reflect on the assessor's integrity, we must say that we think some of his values are so excessive as to make it our duty to reduce them. We therefore reduce valuations on the coal within the following lands to the following amounts:

| Land | Assessed valuation. | Reduced to. |
|---|---|---|
| Sec. 2, township 18 N, range 6 ...... | $23,750 | $10,000 |
| Sec. 10 (less NW1/4 of NW1/4) tp. 18, range 6 ........................ | 15,000 | 8,000 |
| Sec. 11, township 18, range 6 ........ | 32,000 | 10,000 |
| Sec. 15, township 18, range 6 ........ | 12,000 | 7,500 |
| Sec. 22, township 18, range 6 ........ | 10,000 | 7,500 |
| Sec. 11, township 17, range 6 ........ | 16,000 | 8,000 |
| Lots 1, 2, 3 and 6 to 12 inc. and S1/2 Sec. 2, township 17, range 6 ....... | 27,030 | 10,000 |
| E1/2 SW1/4 and S1/2 of NW1/4 sec. 35, township 18, range 6 ............. | 10,360 | 6,000 |

The Federal court in the last trial there fixed the valuation on section 1, township 17, range 6 at $7,500. The assessor allowed that valuation to stand for the year 1921, but for the year 1922 raised it to $18,750. We see no sufficient reason for the raising of this valuation, and we think it should be left where the Federal court placed it—at $7,500.

Upon such of the foregoing lands upon which reductions have been made by us as belong to the Northern Pacific Railway Co., the taxes for 1922 should be based upon the values as we have reduced them, and taxes for the years 1921 and 1922 should be based upon the reductions made by us on the other lands. We do not feel justified in interfering with the assessor's values except as above indicated. The judgment is reversed, and the cause remanded with instructions to the trial court to recast its judgment in accordance with the views here expressed. The respondent will pay its own costs in this court and one-half of appellants' costs taxed here.

MAIN, C. J., FULLERTON, and MITCHELL, JJ., concur.