[No. 29708. *En Banc.* February 23, 1946.]

ANNA B. ROON, *Appellant,* v. KING COUNTY, *Respondent.*[1]

[1]Reported in 166 P. (2d) 165.

*L. H. Wheeler,* for appellant.

*Lloyd Shorett* and *Wm. R. Bell,* for respondent.

STEINERT, J.—Plaintiff as owner of certain land brought suit to vacate and set aside a tax foreclosure judgment and deed and all proceedings connected therewith; to quiet her title as against such judgment and deed; and to obtain a determination of the true value of the land for assessment purposes and an accounting of certain sums of money previously tendered and paid into court by her as in full payment of all taxes then owing on the land. The ground of plaintiff's action, as alleged in her complaint consisting of four causes of action, was that throughout a period of many years the defendant county, through its taxing officials, had "wrongfully, arbitrarily, wilfully, unconscionably, capriciously, tyrannically, and fraudulently" overvalued and overassessed her property at more than four times its true and fair value in money, and that such valuations and assessments were made on a fundamentally wrong basis.

The defendant demurred to the complaint on the grounds (1) that none of the alleged causes stated facts sufficient to entitle plaintiff to any relief; and (2) that each of the causes was barred by the statute of limitations applicable thereto. The demurrer was overruled, and the defendant thereupon joined issue by appropriate admissions and denials of plaintiff's allegations.

The action came on for trial before the court without a jury. At the conclusion of plaintiff's evidence, defendant challenged its legal sufficiency. The challenge was sustained, and the court thereafter entered judgment dismissing the action and directing that the money theretofore tendered and deposited in court by the plaintiff be returned to her. Plaintiff appealed.

As indicated above, the evidence in the case consists solely of that which was introduced by the appellant plaintiff, Anna B. Roon, and we summarize it as follows:

At all times involved in this action prior to December 14, 1940, appellant was the record owner of certain land situated on Maury Island, a part of Vashon Island, in King county, Washington, and described as the west 764 feet of Government lot 4, section 23, township 22 north, range 3 east, W. M., together with second-class tidelands to low tide. The land has a south frontage on Puget Sound and measures about 660 feet north and south, and 764 feet east and west, comprising altogether approximately 18.5 acres. For taxation purposes the land is divided into four tax lots, numbered 24, 11, 18, and 25, respectively, each fronting on the sound and extending back, northwardly, about 660 feet. Each of lots 24, 11, and 18 is 231 feet wide from east to west, and has an area of about 5.60 or 5.75 acres, while lot 25 has a width of 71 feet and an area of 1.71 acres.

The front, or south, side of the land rises on a steep incline from near the water's edge to a height of approximately 300 feet at a point about one fourth the distance between the water line and the north boundary of the land, that is to say, about three fourths of the entire tract is situated north of the brink of the bluff. A portion of the bluff has an almost perpendicular height of from 75 to 200 feet, and the entire bluff is, for the most part, so steep near the line of high tide that only when the tide is out is it possible to pass along the shore. Any attempt to dig into the bank would in all probability cause an earth slide. Along the entire water front there is but one place on any of these lots where there is space sufficient to permit construction of a residence building. The one exception is a

small area, having a width of about 50 feet, in one corner of lot 18, on which a house was built some years ago, but this has since burned down.

On account of the steep incline of the bluff there is no ready means of access to the water from the upper portion of the land, and the construction of a road, or even trails, in that area would be impracticable. Consequently, the only access to the beach is by boat or else by a circuitous route overland. The tidelands have no commercial value.

That portion of the land lying north of the bluff and constituting about three fourths of the area of the entire tract is unimproved, unproductive, and without any water supply. There is no merchantable timber upon it, and its surface is overgrown with hazel brush, poison oak, and ferns. No part of the land adjoins any public road.

Between the years 1930 and 1940, both inclusive, these tax lots were assessed, and taxes were levied thereon, according to the following valuations and rates:

| Year | T. L. 24 | T. L. 11 | T. L. 18 | T. L. 25 | Rate % |
|---|---|---|---|---|---|
| 1930 | $370 | $370 | $410 | $100 | .07563 |
| 1931 | 370 | 370 | 410 | 100 | .07145 |
| 1932 | 310 | 310 | 350 | 90 | .07297 |
| 1933 | 310 | 310 | 350 | 90 | .06155 |
| 1934 | 260 | 260 | 300 | 80 | .05777 |
| 1935 | 260 | 260 | 300 | 80 | .04537 |
| 1936 | 260 | 260 | 300 | 80 | .03807 |
| 1937 | 190 | 260 | 300 | 80 | .04050 |
| 1938 | 190 | 100 | 300 | 80 | .04910 |
| 1939 | 100 | 100 | 100 | 80 | ..... |
| 1940 | 100 | 100 | 100 | 50 | .03450 |

From these figures we have estimated the total tax levied against the entire tract in 1930 as amounting to $94.54. From that time forward until 1940 the assessed valuations were periodically and progressively reduced, so that in the last-mentioned year the total tax amounted to $12.08.

Three tracts of land of comparable size, adjoining appellant's property on the north, were assessed, during the years here in controversy, upon valuations of approximately one third of that at which appellant's land was valued, although those tracts were worth from one hundred per cent to

one hundred fifty per cent more than the land owned by the appellant.

At no time during the course of years above mentioned did the appellant pay any portion of the taxes assessed against her land, although she testified that on a number of occasions she had endeavored to have the board of equalization reduce the assessed valuations, but could never get a hearing before that body.

On July 6, 1940, the respondent county issued a certificate of delinquency covering the entire amount of taxes unpaid since 1930. Thereafter, tax foreclosure proceedings were instituted by the county, and on October 14, 1940, a decree of foreclosure was entered. Pursuant to the decree, the property was put up for sale in the usual manner, and the county, being the only bidder thereon, became the purchaser. A deed to the property was issued to, and recorded by, the county on December 14, 1940.

Nearly three years later, December 6, 1943, appellant tendered to the county treasurer the sum of $188.34 in full payment of all taxes alleged to be due, owing, and delinquent on the property. The tender was refused, and two days later appellant instituted this action and at the same time paid into the registry of the court the amount of money previously tendered by her.

Appellant's first, and principal, contention is that, upon the facts admitted by respondent's challenge to the sufficiency of the evidence, she is entitled to equitable relief, on the ground that her property has been fraudulently overassessed.

Prior to March 18, 1931, it had become well settled by the decisions of this court that an excessive valuation of land for taxation might, in certain instances, be so great as to constitute constructive fraud and warrant the intervention of a court of equity to grant relief. *First Thought Gold Mines v. Stevens County,* 91 Wash. 437, 157 Pac. 1080; *Northern Pac. R. Co. v. Pierce County,* 127 Wash. 369, 220 Pac. 826; *Inland Empire Land Co. v. Grant County,* 138 Wash. 439, 245 Pac. 14; *Inland Empire Land Co. v. Douglas County,* 149 Wash. 253, 270 Pac. 812; *Bestman v. Snohomish*

*County,* 169 Wash. 244, 13 P. (2d) 503; *Northwestern & Pac. Hypotheekbank v. Adams County,* 174 Wash. 447, 24 P. (2d) 1086. The last two cited cases were actions for the recovery of 1930 taxes paid under protest by the plaintiff landowners.

On March 18, 1931, an act relating to actions to recover illegal taxes was passed by the legislature, to take effect immediately (Laws of 1931, chapter 62, p. 201 [Rem. Rev. Stat., § 11315-1 *et seq.*]).

Section 1 of the act (Rem. Rev. Stat., § 11315-1 [P.P.C. § 1979-465]) provides that injunctions and restraining orders shall not be issued or granted to restrain the collection of any tax or any part thereof, or the sale of any property for the nonpayment of any tax or part thereof, except in cases where (1) the law under which the tax is imposed is void, and (2) where the property upon which the tax is imposed is exempt from taxation.

Section 2 of the act (Rem. Rev. Stat. (Sup.), § 11315-2 [P.P.C. § 1979-467]) provides that in all cases of the levy of taxes which are deemed unlawful or excessive by the *person* whose property is taxed or from whom the tax is demanded, such person may pay, under protest, the tax or any part thereof deemed unlawful and may thereafter bring an action, in the superior court or in any Federal court of competent jurisdiction, against the state, county, or municipality by whose officers the tax was collected, to recover such tax, or any portion thereof, so paid under protest.

Section 7 of the act (Rem. Rev. Stat. (Sup.), § 11315-7 [P.P.C. § 1979-477]) prescribes that, except as permitted by the act, no action shall ever be brought or defense interposed attacking the validity of any tax, or any part thereof, *provided, however,* that this section shall not be construed as depriving the defendant in any tax foreclosure proceeding of any valid defense allowed by law except defenses based upon alleged excessive valuations, levies, or taxes.

Appellant herein strenuously contends that the 1931 act did not, and that the legislature thereby could not, impair or lessen the constitutional equity powers of the superior

court in cases involving the legality of any tax. Washington Constitution, Art. IV, § 6. See, also, Art. IV, § 1.

Almost immediately after the passage of the 1931 act, a suit was brought seemingly to obtain a construction of its provisions. *Casco Co. v. Thurston County,* 163 Wash. 666, 2 P. (2d) 677, 77 A. L. R. 622, decided July 24, 1931, upon an *En Banc* hearing. The plaintiff therein sought to enjoin the collection of the tax assessed against certain real property and, as the basis for its action, alleged a gross over-valuation of the property for taxation purposes, resulting in a greatly excessive tax. Three principal reasons were assigned by the plaintiff, appellant therein, as grounds for holding the act unconstitutional. The first and third of those reasons were, in effect, the same as those now advanced by the appellant in this case, and in that opinion were stated thus:

"(1) The procedure sought to be established [by the 1931 act] constitutes an unlawful encroachment upon the powers and functions of the judiciary as determined by the constitution. . . .

"(3) It attempts to deprive certain taxpayers of the inherent right to invoke the equity powers of the court and does not supply an adequate or speedy method as compensation for the loss of such inherent rights."

In answer to those contentions, this court said:

"We can see here no encroachment upon the constitutional power of the courts, *but simply and solely a legislative attempt to provide an adequate legal remedy where, if a legal remedy before existed, it was a doubtful or inadequate one, so that the courts, while retaining to the full all of the equitable powers inherent in them, will find only lessened occasions for the use of such powers.* We venture to say that many of what were originally equitable rights have by statutes been made legal rights; and, so far as we are aware, there is no judicial authority for holding that the statutory transformation of an equitable right into a legal right is an encroachment upon the equitable powers of the courts.

*"The final answer to this question is* therefore to be found in the answer to the third question, which is, *Is the legal remedy afforded by the statute an adequate and sufficiently speedy one?"* (Italics ours.)

Proceeding upon that statement, this court held that the 1931 act furnished a speedy and adequate remedy, and, upon the strength of that conclusion, dismissed the taxpayer's action for an injunction to restrain the collection of the tax.

▮▮▮ We are in absolute accord with the pronouncement made in the *Casco* case. We do not construe the 1931 act as an encroachment upon the constitutional power of the court in the exercise of its inherent equity functions, nor would we accede to such attempt if it were so intended. We accept it simply and *solely* as a legislative undertaking to provide an adequate legal remedy in cases wherein, if a legal remedy existed before, it was a doubtful or inadequate one. Provision for a speedy, adequate remedy having thus been specifically made, the courts, *while retaining to the full all of the equitable powers inherent in them,* have only *lessened occasion* for the exercise of such powers. As stated in *Ballard v. Wooster,* 182 Wash. 408, 45 P. (2d) 511, "Equity does not intervene when there is a complete and adequate remedy at law."

▮▮▮ It is true that in a series of later cases this court has said that the 1931 act provided a new "and exclusive" method of challenging the validity of any tax, or any portion thereof. *Western Machinery Exchange v. Grays Harbor County,* 190 Wash. 447, 68 P. (2d) 613; *In re Yakima Amusement Co.,* 192 Wash. 174, 73 P. (2d) 519; *Etter v. Kronlund,* 198 Wash. 341, 88 P. (2d) 417; *Dexter Horton Bldg. Co. v. King County,* 10 Wn. (2d) 186, 116 P. (2d) 507; *Andersen v. King County,* 18 Wn. (2d) 176, 138 P. (2d) 872. Some of these cases have gone to the extent of saying that the 1931 act took away from the court its power to grant injunctions restraining the collection of taxes, or limited its jurisdiction in that respect, except under the two conditions specifically permitted by the act itself.

We do not now entertain the view as thus categorically expressed in those later affirmations. The remedy afforded by the 1931 act is indeed a new one, and will be considered "exclusive" in the sense that if the court, in a given instance, considers the remedy adequate and sufficient, under

the circumstances of the particular case, it will not exercise its equity powers by injunction, or otherwise. This does not mean, however, that the remedy is "exclusive" in the sense that the legislature has deprived the courts of any of their constitutional equity powers. Although, as stated in the *Casco* case, *supra,* since the passage of the 1931 act there is "lessened occasion" for the exercise of such equity powers by the courts, and although such occasion may indeed be infrequent, nevertheless the courts *retain* all the equitable powers inherent in them, and may still exercise them when the occasion demands it.

Proceeding upon this view, we center our attention upon the case at hand. For ten successive years, appellant failed to pay the taxes which had been levied upon her property, knowing full well, or else charged with full knowledge, that under the requirements of the tax laws a certificate of delinquency ultimately would be issued and the property sold to satisfy those taxes. Still she did nothing. Then, after all legal proceedings for the collection of the taxes had been completed, resulting in a deed of the property to the county, and after the expiration of almost three years in addition, she instituted the present action to vacate all such proceedings and quiet her alleged title to the property.

Prior to the effective date of the 1931 act, appellant could have proceeded by a suit to enjoin the collection of any outstanding tax against her property, under the rule of decisions then in force. After the passage of the 1931 act, she could at any time have paid the accrued taxes, under protest, and brought suit for the recovery of any portion thereof found to be illegal or excessive. The facts in this case demonstrate that compliance with such a course of procedure would not have been an unreasonable requirement or attended with any oppressive consequence. Had she brought, and prevailed in, such action it would have resulted not only in a recovery of any overpayment, but undoubtedly also in a reduction of assessments in the future; on the other hand, had she failed in such action, it would have been because of a determination that the assessor's valuation of her property was not excessive. In either

event, the issue now sought to be raised would have been determined, at a time when the evidence, for the one side or the other, was readily available and capable of being considered in the light of the circumstances and conditions then existing.

The essential purposes of the 1931 act were, and are, to furnish an adequate and sufficient remedy to the taxpayer in case of an illegal or unjust assessment for taxes, and, at the same time, to provide an expeditious method by which the various branches of government affected could obtain the revenue necessary to their maintenance, without protracted delay or the hazards incident to the former method of procedure. We believe that the appellant had a remedy that was plain, simple, speedy, adequate, and complete; and, had she pursued it, all that she now seeks to accomplish would have been realized by her. By her own failure to avail herself of that remedy, she has permitted the situation to develop to its present climax. Under such circumstances, we see no occasion for the intervention by a court of equity or for the exercise of its inherent powers with respect to matters involving the legality of a tax.

Another question presented by the briefs in this case relates to the matter of the applicable statute of limitations.

In view of our decision upon the main issue, however, that question becomes immaterial.

The judgment is affirmed.

MILLARD, ROBINSON, SIMPSON, and JEFFERS, JJ., concur.

DRIVER, C. J., and BEALS, J., concur in the result.

MALLERY, J. (concurring specially)—The appellant did not pay her taxes, did not appear in the tax foreclosure action and present her defenses thereto which were as perfect then as now, allowed judgment by default to be taken against her, and now, more than three years later, seeks by the instant action to have the judgment vacated on the grounds of constructive fraud because of alleged excessive valuations placed upon her property.

It is admitted that the action will not lie if the 1931 legislative act referred to in the majority opinion, with its provisions as to an exclusive remedy in such cases, is constitutional. The majority opinion gives enough validity to the act to hold that it creates a new cause of action not theretofore existing, but holds the exclusive provisions are unconstitutional. In accordance with this latter holding, it holds that the action does lie and proceeds to dispose of it on its merits.

The majority opinion holds the act to be unconstitutional by reason of violating Art. IV, § 6 of the state constitution, which reads as follows:

"JURISDICTION OF SUPERIOR COURTS.—*The superior court shall have original jurisdiction in all cases in equity* and in all cases at law which involve the title or possession of real property, or the legality of any tax, impost, assessment, toll, or municipal fine, and in all other cases in which the demand or the value of the property in controversy amounts to one hundred dollars, and in all criminal cases amounting to felony, and in all cases of misdemeanor not otherwise provided for by law; of actions of forcible entry and detainer; of proceedings in insolvency; of actions to prevent or abate a nuisance; of all matters of probate, of divorce, and for annulment of marriage; and for such special cases and proceedings as are not otherwise provided for. The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court; and said court shall have the power of naturalization and to issue papers therefor. They shall have such appellate jurisdiction in cases arising in justices' and other inferior courts in their respective counties as may be prescribed by law. They shall always be open, except on nonjudicial days, and their process shall extend to all parts of the state. Said courts and their judges shall have power to issue writs of mandamus, quo warranto, review, certiorari, prohibition, and writs of habeas corpus, on petition by or on behalf of any person in actual custody in their respective counties. Injunctions and writs of prohibition and of habeas corpus may be issued and served on legal holidays and nonjudicial days." (Italics mine.)

When the court interprets the law, even though it be statutory, in applying it to the facts of a case before it, it

has exercised its *jurisdiction* in the sense in which it was meant by the constitution. Thus, a justice of the peace court has no *jurisdiction* to hear a divorce action. When the action is heard before a superior court, its jurisdiction has not been invaded by the fact that it must determine the rights and remedies of the parties according to the rules laid down by the legislature.

This court has been quick to assert the duty of the superior court to apply the common law as formulated by itself and has never considered that requirement to constitute an encroachment upon the *jurisdiction* of the superior court. Thus, if by its own rule, this court had held that the instant action did not lie, the superior court, by acting in accord, would not be thought by this court to have been deprived of its jurisdiction. By the same token, it should not hold that applying statutory law to the facts, destroyed its *jurisdiction*.

*Jurisdiction* does not include the right to act arbitrarily or in violation of the constitution, statutes, or the common law, or the right to set them aside. In the sense in which we are here considering it, *jurisdiction* is only the designation of the tribunal that has the authority to consider the facts and apply the law; and whether the law be statutory or common law, is immaterial.

The appellant had a cause of action under the rules of the common law as it existed prior to the 1931 act of the legislature referred to. The question is: Is the 1931 act unconstitutional because it conflicts with the preexisting common law?

Our state government is composed of three co-ordinate branches. From the constitution each has received a grant of power. This system has been called one of "checks and balances." Although that language is not used in the constitution itself, it is patently not intended that the three branches should encroach upon each other's sphere of authority. Each can act pursuant to its grant within the constitutional limitations placed upon it. If the legislative or executive branches fail to recognize their constitutional limitations and act in violation of them, the judicial branch

declares such acts to be unconstitutional and of no effect. Thus the check upon exceeding their authority and violating their constitutional limitations has its implementation in the judicial branch. There the implementation of checks against unconstitutional acts ends.

If the judicial branch acts unconstitutionally, the other branches cannot set its acts aside. It has been said that *the law is what the supreme court says it is.* This conclusion is inherent in the system. Only self-restraint stands between the judicial branch and the exercise by it of legislative functions granted to the legislative branch.

The problem is not as simple as might be inferred from the layman's concept that the legislative branch makes the laws and the judicial branch interprets them.

If we consider law in the broad sense of being the rules by which people's rights and remedies are determined, then patently the formulation and promulgation of law has never been considered as being either exclusively legislative or exclusively judicial in character. The common law formulated by the judiciary and the statutes enacted by the legislature have both been given effect. Both processes have been employed in the same particular fields of law. That clashes of authority have been substantially avoided in the past has been due to the self-restraint of the judiciary in conceding that legislative enactments were legislative in character and within the constitutional grant of authority to the legislature so long as it recognized the constitutional limitations placed upon it. No distinction has been made between "law" and "equity," and the principle that "equity follows the law" is a simple statement of that fact.

The law is replete with instances where the courts have first formulated rules of the common law in a field later made the subject of statutory enactment. As often as that has occurred, the judiciary has taken the position that the statute replaced the common law. In other words, the common law has receded from the field of the statutory enactment, thus avoiding any overlapping or conflict between them. To put it another way, the power of the court to formulate the common law is recognized only up to the

time the legislature acts within its constitutional limitations upon the same subject matter.

The judiciary, in acting as a check upon the legislature, has held its acts to be unconstitutional only when it exceeded its authority by violating definite limitations placed upon it by the constitution. The courts have never held an act to be unconstitutional because it merely conflicted with some preexisting rule of the common law, nor would the court have any constitutional authority, either direct or inferred, so to do. No other branch of the government, however, is able to act as a check upon it, now that it has done so in this case. The judiciary alone has the power to judge the constitutionality of its own acts, and it alone of the three branches of government can exceed its constitutional powers with impunity. *The law is what the supreme court says it is.* Thus, when the supreme court elects to overrule all of its past decisions holding the act to be constitutional and departs from its time-honored custom of holding acts to be unconstitutional only because they violate the constitutional limitations placed upon the legislature and proceeds to adopt this new rule that acts of the legislature that conflict with the common law are unconstitutional, there is no higher authority to which recourse may be had, and nothing can be done about it.

This new rule that *jurisdiction* confers upon the judiciary an exclusive power to formulate, by common-law process, the rules by which people's rights and remedies must be determined, and that any statute that conflicts with it is unconstitutional, is not consistent with our form of government.

Since the judgment in the instant case is the same as it would be had the constitutionality of the act in question been upheld, I concur in the result. I do not concur in holding the act to be unconstitutional.

BLAKE, J., concurs with MALLERY, J.