[No. 8858–8–III. Division Three. November 3, 1988.]

JOHN GALLADORA, *Appellant,* v. RICHARD E. RICHTER, ET AL, *Respondents.*

---

*Dale L. Russell,* for appellant.

*Michael D. Kinkley,* for respondents.

THOMPSON, C.J.—John Galladora appeals the dismissal of his action to set aside the forfeiture of a real estate contract. We affirm.

Mr. Galladora and his then wife, Carol, purchased real estate in Pend Oreille County on a contract executed in October 1978. The sellers were Marjorie and Richard Richter, defendants in this action. The contract required the

Galladoras to pay $20,000 down, with the balance of $17,500 to be paid in monthly installments of $177.51. The Galladoras agreed to pay taxes and assessments and to maintain insurance.

The Galladoras stopped making monthly payments after September 1986, and failed to pay real estate taxes for 1986.[1] In an affidavit, Mr. Galladora stated he went to San Diego for the winter, authorizing his attorney, Dale L. Russell, to sell the property. He permitted his former wife to reside in the home pending the sale, with the understanding she would make the contract payments.

In November 1986, while still in California, Mr. Galladora signed a confession of judgment granting Mr. Russell $10,721.53 for attorney fees incurred during the dissolution. Mr. Russell then entered a judgment for that amount in Pend Oreille County, and recorded deeds of trust on the property given by Mr. Galladora to Mr. Russell to secure the judgment.

Later that month, the Richters recorded a memorandum of the real estate contract and a notice of intent to forfeit. The notice listed the following alleged defaults: contract payments for October and November 1986; real estate and personal property taxes for 1986; and failure to maintain insurance on the property. In an affidavit, Mrs. Richter stated she mailed copies of the notice, both first class and certified, to Mr. Galladora at a La Mesa, California, address given to her by Mr. Galladora.[2] Mrs. Richter also mailed copies of the notice to Mr. Russell, based on his interest in the property. On December 1, 1986, Mr. Galladora's daughter, Patricia, signed for the certified mail and listed the

---

[1]The Galladoras' breach apparently was related to the dissolution of their marriage in October 1986. The decree of dissolution awarded each party one-half the equity, if any, in the property at issue here.

[2]The certified mail receipt listed the address as P.O. Box 4104, but the return receipt listed the address as P.O. Box 4204. On the deeds of trust, Mr. Galladora listed his address as P.O. Box 4024. The parties appear to agree, however, that the "correct" address, where the certified letter actually was delivered, was P.O. Box 4204.

"Addressee's Address" as 3830 Gamma Street, San Diego, California.

On March 6, 1987, the Richters recorded a declaration of forfeiture of the contract. Mrs. Richter directed the notice of the declaration to Mr. Galladora at the San Diego address. Both the certified and first class letters were returned as undeliverable, so Mrs. Richter repeated the mailing to the La Mesa address, where Mr. Galladora signed for the certified mail on April 2, 1987.

On April 30, 1987, Mr. Galladora and Dale and Rickie Russell filed this action against the Richters to set aside the forfeiture on statutory and equitable grounds. On cross motions for summary judgment, the court concluded the Richters were entitled to forfeit the contract, they materially complied with the Real Estate Contract Forfeiture Act, RCW 61.30, and there was no basis for equitable relief. The court awarded summary judgment in favor of the Richters and granted attorney fees of $2,424. John Galladora brings this appeal individually.

Summary judgment is appropriate

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

CR 56(c). In reviewing a summary judgment, the court takes the position of the trial court, assuming facts most favorable to the nonmoving party. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.,* 81 Wn.2d 528, 530, 503 P.2d 108 (1972). Generally, a question of fact is properly left to the trier of fact, but when reasonable minds could reach only one conclusion, such questions may be determined as a matter of law. *Hartley v. State,* 103 Wn.2d 768, 775, 698 P.2d 77 (1985).

■ Mr. Galladora argues first that the Richters did not materially comply with the notice provisions of the Real

Estate Contract Forfeiture Act. Former RCW 61.30[3] estab-
lished the exclusive procedure for nonjudicial forfeiture of a
real estate contract. A forfeiture may be set aside only if
the rights of bona fide purchasers and encumbrancers are
protected, RCW 61.30.140(4)(a), and only if:

> the person bringing the action establishes that the seller
> was not entitled to forfeit the contract at the time the
> seller purported to do so or that the seller did not mate-
> rially comply with the requirements of this chapter.

RCW 61.30.140(4)(b). Mr. Galladora argues the Richters
materially violated the act's requirements in four respects:[4]
(1) the notice of intent to forfeit was not sent to Mr. Galla-
dora's last known address pursuant to former RCW 61.30
.050(2)(b);[5] (2) the declaration was not sent to Mr. Galla-
dora's last known address within 3 days of its recording as
required by former RCW 61.30.060;[6] (3) neither the notice

---

[3]The act was extensively amended by Laws of 1988, ch. 86. Citations to spe-
cific sections that have been changed will be prefaced with "former".

[4]Mr. Galladora also raises several issues related to the rights of persons who
are not parties to this appeal. Any failure in notification of these nonpurchasers
affects the validity of the forfeiture only as to them. Former RCW 61.30.040(2).
The validity of the forfeiture as to Mr. Galladora, as purchaser under the con-
tract, is unaffected by failure to properly notify nonpurchasers. *See* former RCW
61.30.040(1).

[5]Former RCW 61.30.050:
"Notices—Form—Method of service. . . .
"(2) The required notices shall be given:
". . .
"(b) By either personal service in the manner required for civil actions in any
county in which any of the property is located or by mailing a copy to the person
for whom it is intended, postage prepaid, by certified or registered mail with
return receipt requested and by regular first class mail, addressed to the person at
the person's address last known to the seller or the seller's agent or attorney giv-
ing the notice. For the purposes of this subsection, the seller or the seller's agent
or attorney giving the notice may rely upon the address stated in any document
which entitles a person to receive the required notices unless the seller or the
seller's agent or attorney giving the notice knows such address to be incorrect."

[6]Former RCW 61.30.060:
"Notice of intent to forfeit—Declaration of forfeiture—Time limitations. The
notice of intent to forfeit shall be given not later than ten days after it is recorded.

of intent to forfeit nor the declaration of forfeiture was sent to Mr. Galladora by regular first class mail, as required by former RCW 61.30.050(2)(b); and (4) the notice of intent to forfeit improperly included personal property taxes as an item in default. *See* former RCW 61.30.070(1)(d).[7] To be "material", a statutory failure "must significantly affect some right of the forfeited party". *McLean v. McLean,* 51 Wn. App. 635, 641, 754 P.2d 1033 (1988).

Mr. Galladora argues the Richters improperly mailed the notice of intent to forfeit to the La Mesa address, which he claims was not the address last known to the Richters. In her affidavit, however, Mrs. Richter stated she was given that address by Mr. Galladora himself. Mr. Galladora does not directly refute the statement, and does not explain how else Mrs. Richter could have come into possession of the address. He insists, nevertheless, that the proper address was in Newport, Washington. According to his own and his attorney's affidavits, mail sent to that address was not forwarded to him. Mr. Galladora cannot logically argue he was prejudiced by the Richters' failure to send a notice that would not have reached him. Also, the record indicates Mr. Galladora actually received the notice. His daughter signed the return receipt, and it may be assumed she would have given the letter to her father. *See Ashley v. Superior Court,* 83 Wn.2d 630, 638, 521 P.2d 711 (1974). Also, in a letter to Mrs. Richter, Mr. Russell requested a copy of the real estate contract "as is noted in your Forfeiture Notice recently sent to John Galladora". The letter was dated December 1, 1986, the same day Patricia Galladora signed

---

The declaration of forfeiture shall be given not later than three days after it is recorded."

[7]Former RCW 61.30.070:

"Notice of intent to forfeit—Declaration of forfeiture—Contents. (1) The notice of intent to forfeit shall contain at least the following:

". . .

"(d) A description of each default under the contract on which the notice is based;"

for the certified letter, and 2 days before Mr. Russell himself received the notice by certified mail. Finally, Mr. Galladora actually received the declaration of forfeiture at the La Mesa address in April. The Richters' error, if any, in mailing the notice of intent to the La Mesa address was not material.

Mr. Galladora next argues he received the declaration of forfeiture on April 2, 1987, more than 3 days after the declaration was recorded on March 6, 1987. However, Mrs. Richter first mailed the declaration to Mr. Galladora, at the San Diego address, on March 6, 1987. Notices are deemed "given", for the purposes of RCW 61.30, "when served, mailed, or posted". Former RCW 61.30.050(3); *see* Laws of 1988, ch. 86, § 6. The questions, then, are whether the San Diego address was the address last known to the Richters, and, if not, whether the failure to give timely notice was material. Mrs. Richter stated in her affidavit that she mailed the declaration to the San Diego address because the return receipt from the notice of intent indicated that was the "Addressee's Address". Logically, the San Diego address then was the address last known to the Richters. Even if the mailing was a technical violation, however, the act itself limits the consequences. It penalizes untimely notice only if it is "material". Hume, *The Washington Real Estate Contract Forfeiture Act,* 61 Wash. L. Rev. 803, 813 (1986) (hereafter Hume). Here, Mr. Galladora actually received the declaration of forfeiture on April 2, 1987, and then timely initiated this action as required by former RCW 61.30.140(2). The failure, if any, did not significantly affect any of Mr. Galladora's rights[8] and thus was not material.

---

[8]Recording of the declaration of forfeiture sets the beginning of two time periods: (1) the 60–day period during which the forfeited party may file an action to set aside, former RCW 61.30.140(2); and (2) the 10–day period during which the purchaser is entitled to possession of the property, former RCW 61.30.100(2)(c). Mr. Galladora has not argued he was prejudiced by the denial of possession during the 10–day period.

Mr. Galladora's contention that the Richters failed to mail the notices by regular first class mail is meritless. Nothing in the record refutes Mrs. Richter's statement that she mailed the notices, "both first class and certified", to Mr. Galladora. Her statement is supported by a returned first class envelope, addressed to Mr. Galladora at the San Diego address. The logical assumption is that anyone who attempts to satisfy the statutory requirement by sending the notices by certified mail also will absorb the added cost of first class postage.

Finally, Mr. Galladora argues the notice of intent to forfeit improperly listed unpaid personal property taxes for 1986 totaling $523.95. He contends the real estate contract did not require the purchasers to pay personal property taxes, and the unpaid taxes did not affect the Richters' security interest. The contract required the Galladoras to pay all taxes "ordinarily payable", and permitted forfeiture "if buyer becomes delinquent on any payment of principal or interest or taxes . . ." Personal property taxes may be a lien against real property of the person assessed. RCW 84.60.020–.040. Here, the personal property taxes became a lien against the property, and the Richters were justified under the contract in demanding the default be cured.

Even if the taxes were improperly included, Mr. Galladora's remedy was to request a court order to restrain or enjoin the forfeiture on the grounds there was no default for personal property taxes. Former RCW 61.30.110. However, since Mr. Galladora was clearly in default for failure to make monthly payments, it is difficult to see the logic in his argument the Richters were not entitled to forfeit the contract. RCW 61.30.140(4)(b).

Mr. Galladora next argues the forfeiture should have been set aside for equitable reasons. He contends the court's equitable power to set aside a forfeiture survives the adoption of the Real Estate Contract Forfeiture Act in 1985. He cites several cases in which the court, in equity, granted grace periods during which the purchasers were entitled to cure defaults. *See Dill v. Zielke*, 26 Wn.2d 246,

173 P.2d 977 (1946). Mr. Galladora apparently seeks such equitable relief here.

■ The Supreme Court has held the Legislature "can never totally deprive the courts of their constitutional equity power". *Tyler Pipe Indus., Inc. v. Department of Rev.,* 96 Wn.2d 785, 789, 638 P.2d 1213 (1982). However, equity does not intervene where there is a complete and adequate remedy at law. *Roon v. King Cy.,* 24 Wn.2d 519, 526, 166 P.2d 165 (1946). In *Roon,* a landowner sued to set aside a tax foreclosure, claiming earlier cases, in equity, permitted her to assert constructive fraud. In the interim, however, the Legislature had adopted a statute establishing a procedure for recovery of illegal taxes.

> We believe that the appellant had a remedy that was plain, simple, speedy, adequate, and complete; and, had she pursued it, all that she now seeks to accomplish would have been realized by her. By her own failure to avail herself of that remedy, she has permitted the situation to develop to its present climax. Under such circumstances, we see no occasion for the intervention by a court of equity or for the exercise of its inherent powers with respect to matters involving the legality of a tax.

*Roon,* at 528.

Here, the act provides for a 90–day period during which the purchaser may cure a default, RCW 61.30.010(2); former RCW 61.30.070(1)(e). This period is 60 days longer than that established in the contract, and the relief granted is greater than that in many pre–act cases in which the purchaser was required to pay the entire amount of the contract. *See John R. Hansen, Inc. v. Pacific Int'l Corp.,* 76 Wn.2d 220, 455 P.2d 946 (1969). Mr. Galladora claims substantial equity in the property, a factor considered in pre–act cases in awarding a grace period to cure the default. *State ex rel. Foley v. Superior Court,* 57 Wn.2d 571, 358 P.2d 550 (1961). The act provides further relief in such situations, permitting the purchaser to seek an order for public sale of the property, with the surplus distributed to the purchaser after the seller and other outstanding obligations

are paid. Former RCW 61.30.120. This relief was not available under later pre–act cases. Hume, at 812.

The Real Estate Contract Forfeiture Act provided a plain, adequate, simple and speedy remedy for Mr. Galladora and gave him at least as much relief as pre–act equity cases would have given. There is no reason to allow equity to intervene.

Both parties seek attorney fees on appeal. RCW 61.30-.140(5) provides for discretionary fees to the purchaser if the forfeiture is set aside, and to the seller if the forfeiture was conducted in compliance with the act. The real estate contract also provides for fees to the prevailing party in "any court proceeding regarding this agreement". In these circumstances, reasonable fees must be awarded to the prevailing party, the Richters. *Singleton v. Frost,* 108 Wn.2d 723, 742 P.2d 1224 (1987).

The Richters also request terms and compensatory damages directly from Mr. Russell pursuant to RAP 18.9, contending this appeal is frivolous. These damages "typically involve payment of part or all of the moving party's attorney fees." *Boyles v. Department of Retirement Sys.,* 105 Wn.2d 499, 506, 716 P.2d 869 (1986).

> In determining whether an appeal is frivolous and was, therefore, brought for the purpose of delay, justifying the imposition of terms and compensatory damages, we are guided by the following considerations: (1) A civil appellant has a right to appeal under RAP 2.2; (2) all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant; (3) the record should be considered as a whole; (4) an appeal that is affirmed simply because the arguments are rejected is not frivolous; (5) an appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal.

*Green River Comm'ty College Dist. 10 v. Higher Educ. Personnel Bd.,* 107 Wn.2d 427, 442–43, 730 P.2d 653 (1986) (quoting *Boyles,* at 509 (Utter, J., concurring in part, dissenting in part)).

■ Because RCW 61.30 was adopted only recently and the first cases interpreting it were not filed until May 1988, *see McLean v. McLean, supra; Powell v. Moss,* 51 Wn. App. 530, 754 P.2d 697, *review denied,* 111 Wn.2d 1005 (1988), we cannot conclude this appeal presented no debatable issues on which reasonable minds could differ. We decline to impose sanctions pursuant to CR 11 for bad faith litigation.

The trial court's judgment is affirmed, and the Richters are awarded reasonable attorney fees of $5,773.44.

MUNSON, J., and STAUFFACHER, J. Pro Tem., concur.

Reconsideration denied December 20, 1988.