[No. 902-3.  Division Three.  September 24, 1974.]

ISADOR SCHREIBER, *Appellant*, v. CHARLES A. RIEMCKE *et al.*, *Respondents.*

*Velikanje, Moore, Countryman & Shore* and *Warren L. Dewar, Jr.*, for appellant.

*Jon R. Harlan, Prosecuting Attorney*, and *Thomas M. Rasmussen, Deputy*, for respondents.

McINTURFF, J.—Plaintiff appeals from the trial court's order granting defendants' motion for summary judgment and dismissal, and order denying plaintiff's motion for summary judgment. Plaintiff sought to have the court nullify

an increased valuation of his property, to recover real estate taxes paid under protest, and to enjoin any future increased assessment until completion of a systematic revaluation of other taxable real property in Yakima County.

Plaintiff is the owner of real property in Yakima County known as Wards Plaza Shopping Center, under lease to Montgomery Ward Corporation, with 21½ years remaining on the 30-year lease. In April 1971, the appraised value of the property based on the 4-year systematic statutory revaluation was raised to $1,423,800 for the taxable year 1972. A hearing was held on plaintiff's appeal to the Yakima County Board of Equalization (hereafter referred to as the Equalization Board) on September 21, 1971, from which the Equalization Board entered an order reducing the appraised valuation to $780,000. Defendants assert by affidavit of the chief appraiser for the Yakima County assessor's office, Alton Olson, that they concurred in the reduced valuation only because they were led to believe by plaintiff's counsel that the increase in valuation under the law should properly be assessed to lessee Montgomery Ward Corporation, which defendants later determined to be error. Defendants did not appeal from the Equalization Board's order reducing the assessed valuation.

On January 1, 1972, approximately 3½ months after the hearing before the Equalization Board, defendants reappraised plaintiff's property at $1,423,800 for the taxable year 1973. Plaintiff again appealed to the Equalization Board which reduced the assessed value to $1,114,800. Plaintiff appealed to Superior Court, where the court granted defendants' motion for summary judgment from which this appeal is taken.

■ A preliminary question to be resolved is whether this case is properly before this court. The general rule is that when an adequate administrative remedy is provided, it must be exhausted before the courts may intervene. *Wright v. Woodard*, 83 Wn.2d 378, 518 P.2d 718 (1974). This doctrine is particularly appropriate where the questions involve matters within the expertise of the agency,

*e.g., Wright v. Woodard, supra* (classification of property); *Stimson Timber Co. v. Mason County*, 112 Wash. 603, 192 P. 994 (1920) (overassessment of property). But where the questions raised are purely legal and beyond the authority and expertise of an administrative agency to resolve, and it appears that further administrative proceedings would be ineffective or useless, the court may relax its requirement of exhaustion of administrative remedies. *Hillsborough v. Cromwell*, 326 U.S. 620, 625, 90 L. Ed. 358, 66 S. Ct. 445 (1946); B. McAllister, *Taxpayers' Remedies—Washington Property Taxes*, 13 Wash. L. Rev. 91, 128 (1938); *accord, Louisville & Jefferson County Planning & Zoning Comm'n v. Stoker*, 259 S.W.2d 443 (Ky. App. 1953); *Levitt & Sons, Inc. v. Division Against Discrimination*, 31 N.J. 514, 158 A.2d 177 (1960); *Walker Bank & Trust Co. v. Taylor*, 15 Utah 2d 234, 390 P.2d 592 (1964); *see generally In re Buffelen Lumber & Mfg. Co.*, 32 Wn.2d 205, 209, 201 P.2d 194 (1948). *See* discussion in 3 K. Davis, *Administrative Law Treatise* § 20.09 (1958).

The issues raised on this appeal question the constitutionality of the acts of the county assessor in reappraising property outside of the normal 4-year systematic cyclical program. As this issue could not be resolved by the Board of Tax Appeals, it would be useless to entertain further administrative proceedings. Hence, this case may properly be heard in the courts.

■ The crux of this case is whether a county assessor may reappraise property outside of the normal 4-year systematic cyclical program for revaluation. Our answer is yes, *provided,* that there has been a bona fide mistake made in the prior revaluation, and that the resulting assessment is neither arbitrary, capricious, nor violative of the equal protection clauses of our federal and state constitutions, and the uniformity clause of our state constitution.

Initially, we must consider the following statutes. RCW 84.40.020 provides in pertinent part:

All real property in this state subject to taxation shall be listed and assessed every year, . . .

RCW 84.41.030 provides:

Each county assessor shall maintain an active and systematic program of revaluation on a continuous basis, and shall establish a revaluation schedule which will result in revaluation of all taxable real property within the county *at least* once each four years.

(Italics ours.)

The clear import of these statutes is to require the assessment of property *at least* every 4 years to insure uniformity in taxation. The broad purpose of general revaluation throughout the state is to establish "standards of fairness and uniformity." RCW 84.41.010.

The plaintiff argues that a revaluation by the assessor, "out of cycle," was precluded because of the defendants' failure to appeal to the tax commission the Equalization Board's determination of value in 1971. RCW 84.08.130. The merits of this issue can be resolved without determining whether the failure of the assessor to employ the appeal procedure permanently barred a subsequent revaluation within the cyclical period.

The plaintiff cites *Dore v. Kinnear,* 79 Wn.2d 755, 489 P.2d 898 (1971), and *Carkonen v. Williams,* 76 Wn.2d 617, 458 P.2d 280 (1969), for the contention that a departure from the 4-year revaluation schedule violates the equal protection clauses of our state and federal constitutions and the uniformity clause of our state constitution.

In *Carkonen* the court held the 4-year cyclical revaluation program within each county did not violate constitutional provisions relating to uniformity and equal protection. The court said at page 633:

[S]tate courts which have considered cyclical revaluation programs have generally found them to be compatible with constitutional equal protection and uniformity provisions, provided they be carried out systematically and without intentional discrimination.

Later, in *Dore,* the court, in attempting to meet the re-

quirements of RCW 84.41.030, held that the failure to re-value a substantially equal amount of taxable property each year of a 4-year cyclical revaluation program violated the uniformity requirement of article 7, section 1 (amendment 14) of the state constitution, and the equal protection requirements of the state and federal constitutions. The court stated:

> Thus, where a cyclical program of revaluation is undertaken, a systematic and consistent program of revaluation must be maintained during each year of the cyclical period in a county. This would require that substantially an equal amount of taxable property in a county be revalued in each year of the cyclical program in order that all taxpayers receive the same treatment within the cyclical period to avoid derogation of the equal protection clauses of our federal and state constitutions and the uniformity of taxation clauses of our state constitution.

*Dore v. Kinnear, supra* at 763. However, *Dore* and *Carkonen* do not decide whether a reassessment can be made outside the cyclical program if a bona fide mistake has been made in a prior assessment. Uniformity is the keystone of taxation. The reappraisal in this case did not result in the kind of discriminatory taxation found in *Dore*; rather, it attempted to achieve the goal of uniformity being sought by the assessors in *Carkonen.*

It could be contended that reappraisal to correct a mistake would be discriminatory because it would be outside the cyclical program. This contention is answered in the negative. In *Sunday Lake Iron Co. v. Wakefield,* 247 U.S. 350, 352, 62 L. Ed. 1154, 38 S. Ct. 495 (1918), the United States Supreme Court stated:

> The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, . . . It is also clear that *mere errors of judgment* by officials will not support a claim of discrimination.

(Italics ours.)

Additional authority allowing the correction of mistakes

made in property valuations is found in *Lewis v. Bishop,* 19 Wash. 312, 319, 53 P. 165 (1898). The court, in construing the substantially similar predecessor to RCW 84.48.010 (First),[1] concluded that "[this] statute affords ample provision for the correction of any mistakes that may have occurred, and makes it possible that plaintiff's property shall be charged with its just burden of taxation."

We therefore hold that the defendants may reappraise property outside the 4-year systematic cyclical program if there has been a bona fide mistake made in the prior assessment. The assessment in 1972 is not retroactive to the prior year. *See British Columbia Breweries (1918) Ltd. v. King County,* 17 Wn.2d 437, 135 P.2d 870 (1943).

Plaintiff also contends that there was no reappraisal of the property in January 1972, upon which the assessor could adequately base his revaluation. We disagree. There is substantial evidence to the contrary. The findings of the Equalization Board, dated July 1971, state that the property was inspected by the appraiser. Charles Riemcke, Yakima County Assessor, further stated that the property was reappraised in January 1972. In the absence of evidence to the contrary, the presumption of the law is that government officials properly perform their duties in good faith. *Rosso v. State Personnel Bd.,* 68 Wn.2d 16, 411 P.2d 138 (1966).

Plaintiff finally argues there is no evidence that the Equalization Board's act of lowering the appraiser's revaluation in 1971 to $780,000 was based upon a consideration of the lessee's interest being assessed. We do not agree. The findings of the Equalization Board indicate that the "poor lease" was taken into consideration in arriving at this assessed valuation. The findings of the Equalization Board dated July 1971 state that the assessed valuation of

---

[1] RCW 84.48.010 provides:

"First. [The Board of Equalization] shall raise the valuation of each tract or lot or item of real property which in their opinion is returned below its true and fair value to such price or sum as they believe to be the true and fair value thereof, after at least five days' notice shall have been given in writing to the owner or agent."

$1,423,800 was reduced to $780,000 "because of a poor lease something like 30 years at $1 a foot."

Since there was no determination by the trial court that the assessor had made a bona fide error in arriving at the assessed value of the property in 1971, and that the subsequent revaluation was neither arbitrary, capricious or intentionally discriminatory in nature, a material issue of fact remains unresolved. The granting of the motion for summary judgment was therefore improper.

The judgment of the trial court is reversed and the matter is remanded to the trial court for a hearing consistent with this opinion. Each party shall bear its own costs.

GREEN, C.J., and MUNSON, J., concur.