[No. 9254-9-II.   Division Two.   February 13, 1987.]

GARY R. PRISK, *Appellant,* v. THE CITY OF POULSBO, ET AL, *Respondents.*

*Philip P. Malone* and *Malone & Peach,* for appellant.

*Larry C. Martin* and *Ogden, Ogden & Murphy,* for respondents.

REED, C.J.—The plaintiffs, Gary R. Prisk and Olympic Crest Development, seek reversal of a trial court order dismissing their challenge to the constitutional validity of development fees imposed by the City of Poulsbo. The plaintiffs also seek reversal of judgment upholding the validity of the City's utility connection charges. We affirm as to the utility connection charges, but reverse the judgment for development fees.

In 1981 the plaintiffs purchased approximately 14 acres of land in the City of Poulsbo, upon which they proposed to build a 172–unit condominium complex. The plaintiffs' predecessors in interest had been granted a rezone from single family to multiple family in 1976, subject to the terms of a concomitant zoning agreement. An environmental impact statement (EIS) was prepared as part of that rezone process.

In 1979 the predecessor in interest submitted a final site plan to the city council for its approval. Then, in 1980, Mr. Prisk acquired an option to purchase the property, and applied to the City for approval to carry out his predecessor's site plan. The council met and assessed the project $200 per condominium unit to finance general park development and improvement, pursuant to the City's park fee ordinance 79–14. The site plan was approved and building permits were issued, but no construction commenced at that time. The building permits were allowed to expire.

The plaintiffs exercised their option on the property in early 1981. On February 11 of that year, they submitted a revised site plan to the city council for approval. Upon submission of this site plan, the City's SEPA responsible official issued a written memorandum to the planning commission stating that a new EIS was not required. The memo listed several environmental impacts, identified in the 1976 EIS, which would result from the development of the land. These included "increased population density."

The City's planning commission approved the 1981 site

plan, but recommended that several conditions be placed upon the building permits by the city engineer. The city engineer then conditioned the issuance of building permits on a payment of $200 per dwelling unit to the City to finance general park development and improvement, citing as his authority to impose this condition Poulsbo ordinance 79-14, the park fee ordinance.

The developers did not appeal the imposition of the fees to the city council, but rather paid $8,400 to the City and were issued permits for 42 units and a recreation building. The City has since issued permits for the remaining 130 units, which have been built. The park fees on these units have not been paid.

The City also imposed utility connection fees upon the development. The rates were set pursuant to Poulsbo ordinance 83-21, which the City passed in 1983. In passing this ordinance, the city council relied on an analysis that utilized the City's accounting records of utility costs. The developers have connected their completed units to the City's sewer and water systems, but they have not paid the City's fees for these connections.

The developers filed this suit against the City, seeking a declaratory judgment as to the constitutional validity of the park fees and the utility connection charges, as well as injunctive relief and damages. The City counterclaimed for an award in the amount of the fees. The trial court dismissed the claims as to the validity of the park fees, ruling that the developers had failed to pursue an available administrative remedy. The court proceeded, however, to award judgment for those fees to the City on its counterclaim, without specifically finding those fees valid. The court addressed the challenge to the utility connection charges on its merits, and found those charges valid.

We must first determine whether the trial court was correct when it dismissed the plaintiffs' challenge to the park fees for failure to appeal to the city council. The controversy in this regard centers around whether those fees were imposed under the City's SEPA authority, in which case an

appeal to the city council would have been available or, alternatively, whether the fees were imposed pursuant to Poulsbo ordinance 79–14, which affords no administrative remedies which the plaintiffs must exhaust. The trial court correctly concluded that the fees were imposed as part of the City's SEPA responsibilities. The record clearly demonstrates that the City followed SEPA procedures in assessing this development and in imposing the fees.

The City argues that, because the State Environmental Protection Act itself and the City's SEPA implementing ordinances provide avenues of administrative appeal, which the plaintiffs failed to exhaust, the dismissal was proper. We find, however, that the developers were not required to exhaust the SEPA remedies in this case. The developers were entitled to a declaratory ruling that these fees constitute an illegal tax upon their project.

We begin with the proposition that the exhaustion rule is not absolute. The rule provides that "[i]n general, an agency action cannot be challenged on review until all rights of administrative appeal have been exhausted." *Spokane Cy. Fire Protec. Dist. 9 v. Spokane Cy. Boundary Review Bd.*, 97 Wn.2d 922, 928, 652 P.2d 1356 (1982).

The exhaustion principle is founded upon the belief that the judiciary should give proper deference to that body possessing expertise in areas outside the conventional experience of judges. *South Hollywood Hills Citizens Ass'n v. King Cy.*, 101 Wn.2d 68, 73, 677 P.2d 114 (1984) (citing *Retail Store Employees, Local 1001 v. Washington Surveying & Rating Bur.*, 87 Wn.2d 887, 906, 558 P.2d 215 (1976)).

However, when addressing problems involving the exhaustion of remedies rule, reviewing courts necessarily exercise a great deal of discretion. The exhaustion rule is one of restraint, requiring courts to weigh and balance many factors in order to decide whether requiring exhaustion is desirable. *See* K. Davis, *Administrative Law* § 26:1 (2d ed. 1983).

Our Supreme Court has recognized that, although a

strong bias exists toward requiring exhaustion before resort to the courts, when considerations of fairness and practicality outweigh the policies underlying the doctrine, compliance with the rule is unnecessary. *Orion Corp. v. State,* 103 Wn.2d 441, 693 P.2d 1369 (1985).[1] *See also Schreiber v. Riemcke,* 11 Wn. App. 873, 874, 526 P.2d 904 (1974).

In the case before us considerations of fairness and practicality far outweigh this policy. Here, there is no factual dispute between the parties, and hence no need to defer to agency fact–finding procedures. Rather, this is a purely legal dispute. These factors militate heavily against requiring exhaustion. Upon consideration of the fairness and practicality of requiring exhaustion in this case, we must point out that the only avenue of appeal available would have been to the city council, a body which had itself previously imposed these fees directly upon these developers.

■ Moreover, this case comes within the exhaustion exception providing that the requirement of exhaustion of remedies does not apply to prevent review of constitutional issues. Where the issue raised is the constitutionality of the very law sought to be enforced, exhaustion is unnecessary. This is because the administrative body does not have authority to determine the constitutionality of the law it administers; only the courts have that power. *Bare v. Gorton,* 84 Wn.2d 380, 526 P.2d 379 (1974), citing *United States v. Kissinger,* 250 F.2d 940 (3d Cir. 1958) and 3 K. Davis, *Administrative Law* § 20.04, at 74 (1958).

Some cases recognize a distinction between situations where the challenge is to the facial validity of the agency's authority, rather than the validity of that authority as applied by the agency to the particular claimant. Generally, in the latter case exhaustion still should be required. *See* B. Schwartz, *Administrative Law* § 8.37 (2d ed. 1984). Here,

---

[1]In fact, one author has suggested that the merits of the case ought to be considered in determining whether administrative remedies, even if available, must be exhausted. Further, the reviewing court should admit that it has done so. *See* K. Davis, *Administrative Law* § 26:2 (2d ed. 1983).

the developer's claim is facial. They argue, and we agree, that under the guise of SEPA, the City enforced an unconstitutional ordinance (ordinance 79–14) against them.

We also recognize that in *Ackerley Communications, Inc. v. Seattle,* 92 Wn.2d 905, 602 P.2d 1177 (1979), *cert. denied,* 449 U.S. 804 (1980) our Supreme Court declined to apply this exception to the exhaustion rule where a party affirmatively sought declaratory or injunctive relief. In that case the plaintiff's failure to seek an available administrative remedy, a variance, was fatal to his action for a declaratory judgment.[2]

Here, however, nothing like a variance was available to the plaintiffs. An appeal to the city council was available under ordinance 80–29. Pursuant to the terms of that ordinance, however, the council's review was limited to the record alone, and the only ground available for reversal of the city engineer's decision was arbitrary and capricious action. (The trial court's conclusion that an appeal could be taken under ordinance 78–53, which does not by its terms limit the standard of review, was incorrect. Ordinance 80–29 was clearly the applicable ordinance as it alone provided authority for the city engineer's action.)

In applying the arbitrary and capricious standard the sole question before the City would have been whether the building official acted in willful disregard of facts and circumstances. *See Barrie v. Kitsap Cy.,* 93 Wn.2d 843, 613 P.2d 1148 (1980); *Geneva Water Corp. v. Bellingham,* 12 Wn. App. 856, 870, 532 P.2d 1156 (1975). Clearly, the council would not have been able to entertain plaintiffs' legal contentions, including the claim that ordinance 79–14 is unconstitutional. *Bare v. Gorton, supra.* Thus, there would have been no meaningful review, and plaintiffs should not be penalized for failure to pursue this avenue.

---

[2]However, the *Ackerley* court considered the claim because, although no enforcement action had been taken, it was imminent. Thus, the court recognized that the claim could be considered as a defense to enforcement. Here, the City's counterclaim was for enforcement, hence the exception of *Ackerley* applies.

It could be argued that there was a basis not involving constitutional questions upon which the council could have reversed the city engineer's decision. The city council conceivably (although this requires quite a stretch of the imagination) could have reached our conclusion, that is that ordinance 79–14 did not evidence a *specific* environmental policy of the City upon which to condition the issuance of permits. However, by the terms of 80–29 the City could not address any question of law. Moreover, given the City's obvious predilection to assess these fees, the plaintiffs were highly unlikely to be successful.

Therefore, this is a case where any administrative remedy would be inadequate in our opinion, and the plaintiffs will be allowed to raise constitutional issues without being required needlessly to exhaust administrative channels. *Ackerley*, 92 Wn.2d at 909. The dismissal was error.

Because no factual issues are disputed, this court may address the merits of the developer's challenge. The City argues that these fees are a valid exercise of its SEPA authority. SEPA authorizes a municipality to approve a subdivision application, subject to a requirement that the developer pay a fee to mitigate "specific adverse environmental impacts." RCW 43.21C.060. Such action by a municipality is subject to the following additional requirements: the impacts must be identified in the environmental documents prepared under SEPA; the conditions imposed must be stated in writing by the decisionmaker; and the condition must be based on policies identified by the municipality and incorporated into its regulations, plans, or codes. RCW 43.21C.060.

To implement SEPA, the City of Poulsbo adopted ordinances 78–53 and 80–29. Ordinance 78–53 provides the mechanism by which the City can enforce SEPA (*e.g.*, preparation of an EIS, identification of environmentally sensitive areas, designation of a SEPA responsible official). Ordinance 80–29 itemizes the policies upon which the City's nonelected officials may grant, deny, or conditionally grant any permit which requires SEPA compliance, including

"any other policies of the city which have been incorporated into resolutions, regulations, ordinances, plans, or codes and which provide a reasonable basis for attaching conditions to the approval of a proposal . . . in order to mitigate adverse environmental impacts."

Thus, SEPA and ordinance 80–29 empower the city engineer to impose these park fees only if that action is based on environmental policies of the City which are incorporated into ordinances, etc., and which provide a reasonable basis for the fees. Here, the city engineer specifically referred to ordinance 79–14, the park fee ordinance, to fulfill this requirement.

Ordinance 79–14 was adopted by the City in 1979, pursuant to RCW 58.17, which delegates to local governments the responsibility for regulation of subdivisions. The statute requires cities to insure that provisions are made for open spaces, parks, and playgrounds. The ordinance authorizes the City to require a developer to pay a park fee in lieu of dedication of land to fulfill the City's responsibility under the statute. However, in *Hillis Homes, Inc. v. Snohomish Cy.*, 97 Wn.2d 804, 650 P.2d 193 (1982), our Supreme Court held that RCW 58.17 does not give authority to require payment of fees in lieu of dedication of land as a condition of subdivision approval. The court invalidated similar ordinances adopted in Snohomish and San Juan Counties. The fees collected under authority of these ordinances were held to be unauthorized taxes in violation of Washington Const. art. 7, § 5. *Hillis Homes*, 97 Wn.2d at 809. The City cannot fulfill SEPA's requirement that it rely on an environmental *policy* by referring to this park fee ordinance.

Thus, insofar as ordinance 79–14 authorizes Poulsbo to require a developer to pay a park fee in lieu of dedication of land, it is an invalid ordinance under *Hillis Homes*. Yet the City points to this invalid ordinance as evidence of an existing environmental policy regarding increased population density and the resulting need for parks.

Assuming without deciding that cities may circumvent

the *Hillis Homes* prohibition against development fees by utilizing their power to impose conditions under SEPA, RCW 43.21C.060, rather than deriving their authority from RCW 58.17, they may do so only if they act pursuant to legitimate environmental policy concerns which are incorporated into environmental ordinances, and there is a reasonable relationship between the conditions or fees imposed and the environmental objective.[3] Comment, *Subdivision Exactions in Washington: The Controversy Over Imposing Fees on Developers,* 59 Wash. L. Rev. 289 (1984). The need for parks is not an environmental concern simply because the city engineer calls it one, absent a stated policy to that effect. These fees are not a valid exercise of the City's SEPA power. They are, therefore, unauthorized taxes. *Hillis Homes.*[4]

---

[3] RCW 43.21C.060 states:

"Chapter supplementary—Conditioning or denial of governmental action. The policies and goals set forth in this chapter are supplementary to those set forth in existing authorizations of all branches of government of this state, including state agencies, municipal and public corporations, and counties. Any governmental action may be conditioned or denied pursuant to this chapter: *Provided,* That such conditions or denials shall be based upon policies identified by the appropriate governmental authority and incorporated into regulations, plans, or codes which are formally designated by the agency (or appropriate legislative body, in the case of local government) as possible bases for the exercise of authority pursuant to this chapter. Such designation shall occur at the time specified by RCW 43.21C.120. Such action may be conditioned only to mitigate specific adverse environmental impacts which are identified in the environmental documents prepared under this chapter. These conditions shall be stated in writing by the decisionmaker. Mitigation measures shall be reasonable and capable of being accomplished. In order to deny a proposal under this chapter, an agency must find that: (1) The proposal would result in significant adverse impacts identified in a final or supplemental environmental impact statement prepared under this chapter; and (2) reasonable mitigation measures are insufficient to mitigate the identified impact. Except for permits and variances issued pursuant to chapter 90.58 RCW, when such a governmental action, not requiring a legislative decision, is conditioned or denied by a nonelected official of a local governmental agency, the decision shall be appealable to the legislative authority of the acting local governmental agency unless that legislative authority formally eliminates such appeals. Such appeals shall be in accordance with procedures established for such appeals by the legislative authority of the acting local governmental agency."

[4] We recognize that in 1982 the Legislature amended a law prohibiting munici-

Plaintiffs have requested a judgment in the amount of $8,400 representing those fees already paid for permits, claiming these fees were paid under business compulsion. There being genuine issues of material fact regarding this issue, we must remand this issue to the trial court for resolution.[5]

Finally, the plaintiffs also challenge the City's utility connection fees, arguing that because the charges inure to the benefit of the entire utility system, rather than being of special benefit to their parcels, they violate the state constitution and RCW 82.02.020. Plaintiffs also argue that the method used by the City to arrive at the amount of the charges was invalid.

Initially, we hold that RCW 82.02.020 does not limit the City's authority to impose these connection charges. That statute would require that utility charges be proportionate to the share of the utility's costs "attributable to the property being charged." However, the statute has no application here as it specifically states that the existing authority of cities to impose such charges remains unaffected by the statute. The City's existing authority is derived from RCW 35.92.025, which was enacted prior to the 1982 amendment of RCW 82.02.020.

In *Teter v. Clark Cy.*, 104 Wn.2d 227, 704 P.2d 1171 (1985), the Supreme Court held that sewer charges authorized by statute were valid police power measures which are not subject to the "special benefit" requirement of article 7, section 9 of the Washington Constitution. Nor are sewer charges unauthorized taxes, because RCW 35.92.025 expressly authorizes the City to impose these charges.

---

palities from imposing most forms of development fees. RCW 82.02.020. Because this statute was amended after the imposition of fees upon these developers, it has no bearing on this case. Moreover, it is unlikely that the new statute was intended to modify a municipality's substantive SEPA authority.

[5]We do not know if these fees were paid under protest. Neither is it argued that such would be a prerequisite to their recovery. We express no opinion on whether the theory of business compulsion applies.

Further, these charges comply with the uniformity requirement of Const. art. 7, § 1 (amend. 14).[6] The rate schedule considers the use of the system by "old customers" and "new customers"; a classification we find to be entirely reasonable. Newcomers to Poulsbo are charged for the historical cost of the system as it exists today. The earliest customers of the utility system were not charged a connection fee, but on the other hand have paid the most over time. The Supreme Court has said:

> While all taxes upon persons in the same class should be equal and uniform, the question of what persons shall constitute the class is one primarily for the legislature to determine . . . unless clearly arbitrary and without any reasonable basis.

*Teter v. Clark Cy.*, 104 Wn.2d at 240 (quoting *Pacific Northwest Annual Conference of United Methodist Church v. Walla Walla Cy.*, 82 Wn.2d 138, 144, 508 P.2d 1361 (1973) (quoting *Bates v. McLeod*, 11 Wn.2d 648, 120 P.2d 472 (1941)).

Addressing the plaintiffs' challenge to the method used by the City to arrive at the amount of these charges, we decline to overturn the trial court's finding that the method adequately established rates "in order that . . . property owners shall bear their equitable share of the cost of such system." RCW 35.92.025.

Connection fees established by ordinance are presumptively valid, and one who challenges them has the burden of proving that the charges are unreasonable. *See Boe v. Seattle*, 66 Wn.2d 152, 401 P.2d 648 (1965); *Geneva Water Corp. v. Bellingham, supra*. We cannot say that the city council's action was unreasoning.

It is clear from the record that the City acted deliberately and only after consideration of a comprehensive analysis of the historical costs of the system. The analysis

---

[6]That amendment states in part: "All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only." Const. art. 7, § 1 (amend. 14).

identified historical costs paid by customers to construct the systems and calculated reasonable connection fees based upon those costs and the number of connections. Considerable expert opinion was adduced in support of the study and reasonableness of the charges. The developers have failed to demonstrate that the fees were determined arbitrarily or unfairly. We therefore affirm these charges.

Plaintiffs have failed to provide us with authority for their request for attorneys fees on this appeal. Fees are therefore denied.

To the extent this opinion fails to discuss any additional challenges, we hold them to be without merit.

The judgment awarded to the City for park fees is reversed. The judgment representing utility fees is affirmed. The cause is remanded for consideration of the developer's prayer for judgment in the amount of $8,400 representing park fees already paid.

PETRICH and WORSWICK, JJ., concur.

Review denied by Supreme Court June 2, 1987.