**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| KIMBERLYN DOTSON, individual, | No. 50860-5-II |
| Appellant, | |
| v. | |
| PIERCE COUNTY, acting through its Planning and Land Services Department, a municipal corporation, | UNPUBLISHED OPINION |
| Respondent. | |

JOHANSON, J. — Kimberlyn Dotson appeals the Pierce County Hearing Examiner's (Hearing Examiner) decision upholding the notice and order to correct (NOTC) issued by Pierce County's Department of Planning and Land Services (PALS). The NOTC notified Dotson that she was in violation of various provisions of Title 18E of the Pierce County Code (PCC). The NOTC alleged that Dotson maintained an unapproved paddock, shelter, and horse within a proscribed buffer zone for the regulated fish and wildlife species and habitat conservation area on her property. Dotson argues that the Hearing Examiner erred in admitting evidence that the County obtained in violation of the PCC and her constitutional right to privacy. She argues that without the challenged evidence there is not substantial evidence that she violated Title 18E PCC. She also argues that the Hearing Examiner's decision violated her constitutional right to procedural

due process and that there is not substantial evidence supporting the Hearing Examiner's conclusion that Dotson breached a binding settlement agreement with the County. We affirm.

FACTS

I. CITIZEN'S COMPLAINT

This appeal arises out of a citizen's complaint that the Department of Ecology (DOE) received on September 29, 2015, alleging unpermitted, regulated activities within a fish and wildlife habitat area on Dotson's property. The citizen-initiated complaint alleged that Dotson built a fence, corral, and feeder for animals and shoveled dirt into a creek so its land is no longer a creek. The DOE forwarded the citizen-initiated complaint to PALS.

II. DOTSON PROPERTY INVESTIGATION

Mary Van Haren, an enforcement environmental biologist for PALS, investigated the citizen-initiated complaint during a visit to Dotson's property on October 15. Van Haren initially viewed Dotson's property from 296th Street East, a Pierce County public road. During the site visit, from the public road, Van Haren confirmed the presence on Dotson's property of a culvert and natural water, which is a fish and wildlife habitat area indicator. From the public road, Dotson could not see any improvements on Dotson's property with the exception of a portion of the fence.

Van Haren then walked on 55th Avenue East, a private road that either abuts Dotson's west property line or is constructed within the western portion of Dotson's property. The private road was neither gated nor posted with "No Trespassing" signs. From the private road, Van Haren observed the fenced area and horse stall. Van Haren also observed a low topical drainage in the culvert area on the private road and a continuation of the drainage south through the paddock on Dotson's property.

Van Haren relied upon her observations at the culverts beneath the public and private roads, as well as a view into Dotson's property from the private road, to note the location of the fenced area and stall within 165 feet of the drainage or stream. On a subsequent visit, Van Haren noted that the creek continued to flow naturally, and therefore the citizen-initiated complaint of shoveling dirt into the creek did not appear to have occurred or impacted the flow.

To determine whether the location of the paddock and stall violated the PCC, Van Haren relied in part on a habitat assessment for an adjacent, upstream property conducted in 2007. The 2007 habitat assessment classified the stream flowing through Dotson's property and the adjacent, upstream property as an F1 stream type. Van Haren testified about the 2007 habitat assessment, but it was not admitted into evidence.

Van Haren also utilized aerial photographs, orthophotographs, planimetrics, and geographic information system (GIS) photographs to confirm Dotson's violation of the PCC.

### III. COMPLIANCE LETTER

On November 25, Van Haren sent Dotson a compliance letter explaining that the location of the paddock and stall violated Title 18 PCC,[1] specifically former PCC 18E.10.050 (2006). Van Haren stated that she saw the violation from adjacent roads. The compliance letter stated that Dotson expressed a willingness to relocate the paddock and stall to an area located approximately 100 feet from the stream which was still within the stream buffer. Because the stream had a 150-foot buffer, the letter notified Dotson that she had to submit the following application materials to PALS by March 1, 2016 for an approval of the relocation: a resource management application

---

[1] The regulation of potential and actual fish and wildlife habitat areas are governed by chapters 18E.10 and 18E.40 PCC.

checklist, a master application, a farm management plan,[2] and a $650 fee for a habitat assessment of her property. Dotson did not appeal the compliance letter.

Dotson submitted all of the materials and the fee as requested in the compliance letter. In Dotson's master application, which she signed, she acknowledged the PCC violation of having a horse in a fish and wildlife habitat. Dotson also attached an aerial photo of part of her property. In the farm management plan, Dotson acknowledged that (1) the horse and paddock were within a critical area buffer, (2) an unnamed seasonal tributary to S. Fork Muck Creek was on the property, and (3) she had to remove the horse and shelter from the stream corridor and its buffer by March 1, 2016.

Dotson and the Pierce Conservation District (PCD) signed an agreement authorizing a grant from DOE to cover the cost of relocation. The agreement, which Dotson signed, acknowledged that the paddock, shelter, and horse were on an F1 seasonal stream located on Dotson's property.

After Dotson submitted the materials and the fee requested in the compliance letter, PALS sent to Dotson a regulated fish and wildlife species and habitat conservation area approval for her signature. PALS also issued a water-type verification classifying the stream on Dotson's property as an F1 stream type.[3] The approval and resolution of the violation was contingent on Dotson signing and recording a "Critical Area/Buffer Notice," "Conditions of Critical Area Approval,"

---

[2] A farm management plan is prepared by the Pierce Conservation District as part of the requirements under former PCC 18E.40.040 (2009).

[3] An F1 stream type includes water courses providing habitats for critical fish species. Former PCC 18E.40.060 (2006).

and the approved site plan that showed the critical areas and buffers located on her property. Dotson did not sign or record those documents.

IV. NOTC

On July 8, 2016, Van Haren sent Dotson an NOTC directing Dotson to sign, notarize, and return the fish and wildlife habitat area approval documents. The NOTC notified Dotson that PALS would take enforcement actions against her if she did not sign and record the approval on the title to her property within 30 days. The NOTC also incorporated the farm resource management plan.

V. PROCEDURAL BACKGROUND

Dotson filed a petition for administrative review of the NOTC. PALS denied the petition because the NOTC was not issued in error. Dotson appealed PALS' decision to the Hearing Examiner.

A. PUBLIC HEARING AND VAN HAREN'S TESTIMONY

During the public hearing before the Hearing Examiner, Dotson moved to exclude evidence of all County materials and actions taken on or after October 15, 2015, because Van Haren "relied upon aerial and planimetric material" in alleged violation of PCC 18.140.040(B)(5). Administrative Record Verbatim Report of Proceedings at 44. Dotson also objected to the admission of any materials obtained from the private road as obtained in violation of Dotson's right under the federal and state constitutions to privacy. The Hearing Examiner admitted all of the challenged evidence for the purpose of the public hearing, noting that he would revisit Dotson's objections when making his decision.

Van Haren was the only witness at the public hearing. Van Haren testified to the following relevant facts.

Van Haren referenced a copy of the CountyView GIS map after receiving the citizen-initiated complaint, but before the October 15 site visit. The CountyView GIS map showed a blue hydro center line on the Dotson property and a potential fish and wildlife habitat in a pinkish gray translucent area on either side of the hydro center line. Van Haren testified that the blue hydro center line on the CountyView GIS map originated from the Department of Natural Resources' (DNR) water typing under WAC 222-16-030 and that the CountyView GIS map is a mapping source for fish and wildlife habitat areas as enumerated under former PCC 18E.10.140, App. A(F)(2) (2015). The hydro center lines on CountyView GIS maps include the latest information for water typing and are continuously updated based on new data.

From the public road, Van Haren confirmed the presence of the hydro center line and natural water that is a fish and wildlife indicator. From the private road, Van Haren could see that the stream went through only the paddock on Dotson's property. The private road leads to the driveways of four parcels, but not to Dotson's property. To Van Haren, the private road appeared open to members of the public because there were no gates blocking access and no signs near the entrance indicating that it was not open to travel by members of the public. Van Haren did not obtain an administrative warrant or consent from any property owners before driving down the private road. Van Haren confirmed that the presence of the paddock, horse shelter, and horse on Dotson's property violated Title 18E PCC based on the CountyView GIS map and site visit.

### B. WRITTEN DECISION WITH FINDINGS OF FACT AND CONCLUSIONS OF LAW

In a written decision, the Hearing Examiner noted that the following relevant exhibits were submitted and made a part of the record.

| Hearing Ex. # / Letter | Description |
|---|---|
| Ex. 1 | PALS' staff report |
| Ex. 2 | Dotson's application materials |
| Ex. 3 | PALS' decision and documents |
| Ex. 4 | NOTC and routing documents |
| Ex. 5 | Site information |
| Ex. 6 | CountyView GIS web map |
| Ex. 7 | Site information |
| Ex. A | Initial report / citizen's complaint |
| Ex. B to H | E-mails between PALS, DOE, and PCD |
| Ex. I | Site information |
| Ex. J | Intersection photograph |
| Ex. K | Intersection photograph |
| Ex. L | Map showing red lines |
| Ex. M | RESM certified mail information |

The Hearing Examiner entered factual findings substantially similar to the facts laid out above. However, the Hearing Examiner concluded that Van Haren did not enter Dotson's parcel.

The Hearing Examiner also entered relevant conclusions. The Hearing Examiner concluded that it had no authority to resolve alleged state and federal constitutional violations raised by Dotson against the County. However, the Hearing Examiner also denied all of Dotson's objections to the entry of allegedly illegally obtained evidence into the record. Without ruling on the constitutionality of the entry, the Hearing Examiner noted that the private road was neither gated nor posted with "No Trespassing" signs, and Van Haren did not enter Dotson's parcel. The Hearing Examiner also found that Van Haren never entered Dotson's parcel and therefore did not personally observe the presence of the stream on the site or the presence of a stream within the horse paddock area.

The Hearing Examiner also ruled that PCC 18.140.040(B)(5) does not prohibit the use of aerial photographs, orthophotographs, planimetrics, and GIS photographs to investigate complaints or violations that are not initiated by the County. Therefore, the County did not violate the PCC by using aerial photographs, orthophotographs, planimetrics, and GIS photographs in its investigation of the citizen-initiated complaint against Dotson.

The County's reliance on the 2007 habitat assessment for a neighboring parcel was appropriate for consideration in typing the stream on Dotson's parcel because there was no evidence the DNR found it necessary to update its map for the affected stream, as would otherwise be required under WAC 222-16-030.

The Hearing Examiner further concluded that Dotson's parcel is covered by a potential fish and wildlife habitat conservation area and therefore former PCC 18E.40.020(E) (2005) requires fish or wildlife habitat conservation area review. The Examiner noted that PCC 18E.40.020(E) states that potential fish and wildlife habitat conservation areas are depicted on PCC 18E.10.140 Appendix A, subsection G, and that PCC 18E.10.140 Appendix A, subsection F, also sets forth sources, such as maps and data bases, used as indicators of critical fish or wildlife presence. The Examiner ruled that the omission of PCC 18E.10.140 Appendix A, subsection F, from PCC 18E.40.020(E), does not void subsection F or other PCC requirements. Additionally, the habitat assessment that Van Haren prepared and submitted to Dotson, along with the farm management plan, satisfy the requirements for a habitat assessment set forth in PCC 18E.40.030(B)(2).

The Hearing Examiner denied Dotson's appeal, finding that the County showed by a preponderance of the evidence that (1) a fish and wildlife critical area and buffer exists on Dotson's parcel, (2) Dotson conducted unpermitted regulated activities within the critical area and buffer,

(3) violations of Title 18E PCC as set forth in the NOTC occurred on Dotson's parcel, and (4) the NOTC was appropriate and satisfied all the criteria set forth in the PCC.

After concluding that the NOTC satisfied the PCC and that the County proved Dotson violated the PCC, the Hearing Examiner entered conclusions on issues he raised sua sponte. The Hearing Examiner concluded that Dotson essentially entered into a binding settlement agreement with the County, which Dotson breached and that PALS issued NOTC in the nature of a specific performance action to compel Dotson to perform her remaining obligation under the settlement agreement.

Dotson filed a Land Use Petition Act (LUPA)[4] petition in Thurston County Superior Court. The superior court affirmed the Hearing Examiner's decision and denied the petition. This appeal followed.

## ANALYSIS

### I. STANDARD OF REVIEW

The LUPA governs judicial review of Washington land use decisions. *HJS Dev., Inc. v. Pierce County*, 148 Wn.2d 451, 467, 61 P.3d 1141 (2003). On review of a superior court's land use decision, we stand in the shoes of the superior court and review the administrative decision on the record before the administrative tribunal—not the superior court record. *Satsop Valley Homeowners Ass'n v. Nw. Rock, Inc.*, 126 Wn. App. 536, 541, 108 P.3d 1247 (2005). We review the administrative record and the questions of law de novo to determine whether the facts and law support the land use decision. *Satsop Valley Homeowners Ass'n*, 126 Wn. App. at 541.

---

[4] Ch. 36.70C RCW.

We may grant relief only if the LUPA petitioner has carried the burden of establishing that one of the standards set forth in RCW 36.70C.130(1) has been met. As relevant here, the standards are

> (b) [t]he land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
> (c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
> (d) The land use decision is a clearly erroneous application of the law to the facts;
> . . . .
> (f) The land use decision violates the constitutional rights of the party seeking relief.

RCW 36.70C.130(1). The standards described in subsections (b) and (f) present questions of law that we review de novo. *Phoenix Dev., Inc. v. City of Woodinville*, 171 Wn.2d 820, 828, 256 P.3d 1150 (2011). The substantial evidence standard in subsection (c) requires a sufficient quantum of evidence in the record to persuade a reasonable person that the declared premise is true when viewed in light of the whole record, after drawing inferences from the evidence in a light most favorable to the decision by the highest forum exercising fact-finding authority. *Phoenix Dev., Inc.*, 171 Wn.2d at 831. Under subsection (d), a finding is clearly erroneous when, although there is evidence to support it, there is a definite and firm conviction that a mistake has been committed. *Phoenix Dev., Inc.*, 171 Wn.2d at 829.

## II. ALLEGED PCC VIOLATIONS BY THE COUNTY

### A. USE OF THE CHALLENGED EVIDENCE

Dotson argues that the Hearing Examiner erred when it concluded that (1) PCC 18.140.040(B)(5) does not prohibit the use of aerial photographs, orthophotographs, planimetrics, and GIS photographs to investigate complaints or violations that are not initiated by the County;

and (2) the County did not violate the PCC by using aerial photographs, orthophotographs, planimetrics, and GIS photographs in its investigation of the citizen-initiated complaint against Dotson. Dotson argues that the Hearing Examiner should have excluded certain evidence because the County used it in violation of PCC 18.140.040(B). We disagree.

PCC 18.140.040(B)(5) provides that "aerial photography, orthophotos, [and] planimetrics . . . shall not be utilized as proactive enforcement tools *to initiate* enforcement actions by [PALS] in pursuit of compliance with the enforcement provisions of [chapter 18.140 PCC]." (Emphasis added.) Therefore, PALS may use aerial photography, orthophotos, and planimetrics *to investigate* citizen-initiated complaints alleging chapter 18.140 PCC violations. *See* PCC 18.140.040(B)(5). Such use of the materials enumerated under PCC 18.140.040(B)(5) does not amount to use of those materials as proactive enforcement tools to initiate enforcement actions.

We hold that the Hearing Examiner did not err when it concluded that PCC 18.140.040(B)(5) does not prohibit the use of the challenged evidence to investigate complaints or violations that are not initiated by the County.

### B. WAS THE CITIZEN'S COMPLAINT AGAINST DOTSON FALSE

Dotson argues that the Hearing Examiner erred in concluding that the County did not violate PCC 18.140.025. We reject Dotson's argument.

First, contrary to Dotson's argument, the Hearing Examiner did not conclude that the County did not violate PCC 18.140.025. Because this is an error-correcting court and the Hearing Examiner made no ruling whether the County violated PCC 18.140.025, we have nothing to review. Thus, Dotson's argument fails.

But even assuming the Hearing Examiner made the alleged conclusion, PCC 18.140.025 provides that (1) "[a]lleged violations will undergo a detailed review by staff for accuracy and content to ensure against false allegations" and (2) "[n]o enforcement action will be pursued until such time staff confirms a violation has occurred." PCC 18.140.025 does not provide that if one of two allegations in a citizen-initiated complaint is false, the County may not investigate or pursue an enforcement action based on the remaining allegation.

Here, the citizen-initiated complaint alleged that Dotson (1) built a fence, corral, and feeder for animals and (2) shoveled dirt into a creek so its land is no longer a creek. After her first site visit, Van Haren confirmed that the location of the fenced area and stall violated Title 18 PCC by referencing the 2007 habitat assessment for the adjacent, upstream property and with aerial photographs, orthophotographs, planimetrics, and GIS photographs. After a second site visit, Van Haren noted that the creek continued to flow naturally, and therefore the citizen-initiated complaint of shoveling dirt into the creek did not appear to have occurred or impacted the flow.

The County pursued an enforcement action based on only the presence of the paddock, shelter, and horse on Dotson's property after it confirmed that Dotson violated various provisions of Title 18 PCC. The County did not pursue an enforcement action based on the allegation that Dotson shoveled dirt into the stream on her property. Neither the compliance letter that Van Haren sent nor the NOTC referred to the second allegation in the citizen-initiated complaint that Van Haren determined was false on her second visit to Dotson's property. Because the County did not pursue the enforcement action against Dotson based on the second, false allegation, Dotson's argument based on PCC 18.140.025 is meritless.

C. ESTABLISHING A FISH AND WILDLIFE HABITAT AREA

1. RELEVANT ENFORCEMENT ACTION

Dotson seems to argue that the County lacked substantial evidence of an actual fish and wildlife habitat area on her property before it sent the compliance letter as she claims is required under former PCC 18E.10.050(H) and PCC 18E.40.030(B)(2).  This argument fails.

For land use matters, a notice of appeal must be filed with PALS within 14 days of the date of an administrative official's decision.  Former PCC 1.22.090(B)(1)(a) (2016).  A notice of appeal on an administrative decision must at a minimum, contain, as relevant here, a copy of any decision or order which is being appealed and a concise statement of the factual and legal basis for the appeal citing specifically the alleged errors in the administrative official's decision.  Former PCC 1.22.090(C)(2)-(3).

Here, PALS issued the compliance letter on November 25, 2015 asserting a violation of Title 18E PCC based on unpermitted activities within a critical area on Dotson's property.  The compliance letter notified Dotson that she had 14 days to appeal from the decision.  The Hearing Examiner found that Dotson did not appeal the compliance letter, and Dotson does not challenge that finding.

Instead, Dotson took steps to comply with the requirement in the compliance letter that she apply for approval of the unpermitted regulated activities on her property once she relocated the paddock, shelter, and horse.  Dotson submitted all of the materials and the fee as requested in the compliance letter.

It was not until July 22, 2016, 14 days after PALS issued the NOTC on July 8, 2016, that Dotson filed a petition for administrative review of the NOTC. Dotson's notice of appeal requests review of only the NOTC and not the compliance letter.

We therefore hold that Dotson's argument that the County lacked substantial evidence of an actual fish and wildlife habitat on her property before issuing the compliance letter fails. The NOTC is the relevant enforcement action because Dotson failed to timely appeal the compliance letter.

2.    ESTABLISHING AN ACTUAL FISH AND WILDLIFE HABITAT AREA

Dotson seems to argue that the County lacked substantial evidence that she violated Title 18E PCC because the County established only a potential, rather than actual, fish and wildlife habitat area. Dotson contends that under chapters 18E.10 and 18E.40 PCC, some evidence the County relied on to establish the fish and wildlife habitat area is either (1) a mapping source that indicates only potential, rather than actual, fish and wildlife habitat areas or (2) not explicitly authorized as a mapping source. Again this argument fails. And to the extent Dotson also argues that the County lacked substantial evidence of a fish and wildlife habitat before issuing the NOTC, that argument is also meritless.

Title 18E PCC applies to "all lands or waters within unincorporated Pierce County that are designated as critical areas by Pierce County." Former PCC 18E.10.050(A). More specifically, chapter 18E.40 PCC covers regulated fish and wildlife species and habitat conservation areas (fish and wildlife areas) as critical areas. Former PCC 18E.10.050(A); former PCC 18E.40.020(D)-(E).

The County's "Fish and Wildlife Habitat Area Maps" identify county-designated fish and wildlife habitat areas. Former PCC 18E.10.050(G). Former PCC 18E.10.050(H) provides that

> [t]he exact boundary of each critical area depicted on the [Fish and Wildlife Habitat Area Maps] is approximate and is intended only to provide an *indication* of the presence of a critical area on a particular site. Additional critical areas that have not been mapped may be present on a site. The *actual* presence of a critical area or areas and the applicability of [Title 18E PCC] shall be determined based upon the classification or categorization criteria and review procedures established for [fish and wildlife habitat areas under former PCC 18E.40.020 and PCC 18E.40.030].

(Emphasis added.)

An actual fish and wildlife habitat area is classified under former PCC 18E.40.020(D)(12)(a) to include, as relevant here, natural waters and adjacent riparian-shoreline areas (165 feet landward measured from the ordinary high-water mark) such as water bodies classified by the DNR water-typing classification system under WAC 222-16-030 and -031.

The DNR water typing classification system under WAC 222-16-030 leads to the production of DNR "Water Type Reference Maps" that the County may use to identify an actual county-designated fish and wildlife habitat area on a specific parcel. Former PCC 18E.10.140, App. A(F)(2). The DNR's fish habitat water-typing maps are based on a multiparameter, field-verified GIS logistic regression model designed to identify fish habitat areas and accurately separate fish habitat streams and non-fish habitat streams. WAC 222-16-030. For example, an F1 stream-type classification by the DNR includes watercourses providing actual habitats for critical fish species. PCC Table 18E.40.060. Therefore, an F1 stream-type classification establishes that the DNR has verified that a stream is an actual fish and wildlife habitat area under former PCC 18E.40.020(D)(12)(a). WAC 222-16-030; PCC Table 18E.40.060. The DNR's fish habitat water-typing maps must be updated every five years *where necessary* to better reflect observed, in-field conditions. WAC 222-16-030.

15

a.       Mapping Sources Indicating Potential, or Identifying Actual, Fish and Wildlife Habitat Areas

Dotson seems to argue that the water-type reference maps authorized as a mapping source under former PCC 18E.10.140, App. A indicate only potential, rather than actual, fish and wildlife habitat areas. We disagree.

The DNR water-type reference maps are explicitly authorized as a mapping source to *identify*, and not just indicate, fish and wildlife habitats. Former PCC 18E.10.140, App. A(F)(2). Therefore, we hold that Dotson's argument that the DNR water-type reference maps indicate only potential, rather than actual, fish and wildlife habitat areas is not persuasive.

b.       Mapping Sources Not Explicitly Authorized

Dotson seems to argue that the County could not use the 2007 habitat assessment for the adjacent, upstream property because it is not an enumerated mapping source under former PCC 18E.10.140, App. A. Dotson also argues that the F1 stream-type designation in the 2007 habitat assessment for the adjacent, upstream property was stale or irrelevant to an assessment of her property.

It is true that habitat assessments for other parcels are not an enumerated mapping source under former PCC 18E.10.140, App. A. However, the 2007 habitat assessment included an F1 stream-type DNR classification for the stream flowing immediately from the adjacent, upstream property through Dotson's property. The PCC explicitly authorizes the DNR water-type classification system as a data source that the County can use to identify and classify water bodies with verified fish habitat streams. Former PCC 18E.40.020(D)(12)(a); WAC 222-16-030. We therefore hold that the Hearing Examiner did not err in concluding that the County's reliance on

the 2007 habitat assessment for a neighboring parcel was appropriate for consideration in typing the stream on Dotson's parcel.

Dotson's additional argument that the 2007 habitat was stale is also not persuasive. WAC 222-16-030 requires that the DNR update its maps only when necessary. We therefore hold that the Hearing Examiner did not err in concluding that there was no evidence the DNR found it necessary to update its map for the affected stream after 2007.

c.    THE COUNTY ESTABLISHED AN ACTUAL FISH AND WILDLIFE HABITAT AREA

Here, there is substantial evidence that before the County issued the NOTC and at the hearing before the Hearing Examiner, the County established an actual, rather than potential, fish and wildlife habitat area. PALS issued a water-type verification classifying the stream on Dotson's property as an F1 stream type based on the blue hydro center line on the CountyView GIS map, which originated from the DNR's water typing under WAC 222-16-030, its site visit, and the 2007 habitat assessment for the adjacent, upstream property. The hydro center lines on CountyView GIS maps include the latest information for water typing and are continuously updated based on new data. The 2007 habitat assessment classified the stream flowing through Dotson's property and the adjacent, upstream property as an F1 stream type. The F1 stream-type designation substantiates the existence of an actual fish and wildlife habitat area on Dotson's property because the designation means the DNR identified and verified that the stream was an actual fish habitat stream. *See* WAC 222-16-030. Thus, the County had substantial evidence of an actual fish and wildlife habitat area on Dotson's property before issuing the NOTC, and the Hearing Examiner had substantial evidence to support its findings.

In addition, even assuming the Hearing Examiner erred in considering the DNR water-type reference maps and the 2007 habitat assessment, there is substantial evidence that the County established an actual fish and wildlife habitat area on Dotson's property. Before the County issued the NOTC, Dotson admitted that an actual fish and wildlife habitat area existed on her property in her signed application materials. Dotson also signed an agreement with the PCD acknowledging that the paddock, shelter, and horse were on an F1 seasonal stream located on Dotson's property.

Based on the foregoing, we hold that substantial evidence supports the Hearing Examiner's conclusion that the County showed by a preponderance of the evidence that a fish and wildlife critical area and buffer exists on Dotson's parcel.

3. *SHEAR*[5] AND *YOUNG*[6]

Dotson relies on *Shear* and the dissent in *Young* to support her argument that the Hearing Examiner erred. These authorities are unpersuasive.

a. *Shear*

Dotson argues that the Hearing Examiner erred in not ruling that the County must first establish a fish and wildlife habitat area with precision before taking enforcement action under Title 18E PCC. Dotson relies on *Shear*, 167 Wn. App. at 563, and the dissent in *Young* in support. The County responds that *Shear* is inapplicable because that case dealt with the King County Code (KCC).

---

[5] *King County Dep't of Dev. & Envtl. Servs. v. King County*, 167 Wn. App. 561, 273 P.3d 490 (2012), *rev'd on other grounds*, 177 Wn.2d 636, 305 P.3d 240 (2013) (commonly known as, and hereinafter, "*Shear*").

[6] *Young v. Pierce County*, 120 Wn. App. 175, 84 P.3d 927 (2004).

In *Shear*, King County issued a notice of violation of the KCC based upon alleged unauthorized activities in a wetland and flood hazard critical area. 167 Wn. App. at 563-65. The hearing examiner in *Shear* concluded that the unpermitted activities did not occur in a wetland and flood hazard critical area because the county had not adopted enforceable standards for determining flood hazard areas. 167 Wn. App. at 563-64, 570-71.

But *Shear* is distinguishable. The review process under *Shear* for flood hazard areas differs significantly from the review process for fish and wildlife habitat areas under PCC 18E.40.030(B)(2). The review under PCC 18E.40.030(B)(2) is required only if the presence or location of a potential regulated fish or wildlife habitat area *has not been mapped*, but may be present on or adjacent to a site. PCC 18E.40.030(A). Therefore, unlike the KCC review provision in *Shear*, review under PCC 18E.40.030(B)(2) is not required if a potential fish and wildlife area is mapped and established. PCC 18E.40.030(A). Here, before issuing the NOTC, the County relied on both maps and its site visit to verify the existence of an actual fish and wildlife habitat area.

Additionally, unlike the KCC provisions in *Shear*, the PCC provides that if a potential fish and wildlife area is unmapped, then PALS must determine whether the site in question is located within a potential regulated fish or wildlife habitat by either (1) reviewing the Critical Fish and Wildlife Habitat Area Maps and other source documents for any proposed regulated activity or (2) conducting a field investigation. PCC 18E.40.030(A)(1)-(2). If the maps, sources, or field investigation indicates that a site with regulated activity is located within a *potential* regulated fish or wildlife habitat area, PALS shall require the submittal of a fish and wildlife application and

habitat assessment to determine the *actual* presence or absence of regulated fish or wildlife species or habitat. PCC 18E.40.030(A)(3).

    b.    *Young*

Dotson relies on a partial dissent by Judge Morgan in *Young*. Because dissents are not controlling precedent, we do not consider this argument further. *See Rose v. Anderson Hay & Grain Co.*, 184 Wn.2d 268, 282, 358 P.3d 1139 (2015) (we will not abandon precedent unless it is determined to be incorrect and harmful).

### D. CONCLUSION

We hold that the County established the existence of a critical wildlife area before issuing the NOTC and substantial evidence supports the Hearing Examiner's conclusion that PALS has shown by a preponderance of the evidence that a fish and wildlife critical area and buffer exists on Dotson's parcel.

### III. DOTSON'S CONSTITUTIONAL ARGUMENTS

### A. AUTHORITY TO RULE ON CONSTITUTIONAL ISSUES

Dotson argues that the Hearing Examiner erred in ruling that he did not have authority to rule on constitutional issues. We disagree.

The County's hearing examiners have statutory authority to issue final decisions on land use matters including, as relevant here, (1) "[a]ppeals from any final administrative order or decision related to the administration, interpretation or enforcement of the Pierce County Code" and (2) "any order or decision of the Planning Department under the Critical Areas and Natural Resource Lands Regulations." PCC 1.22.080(B)(1)(g), (p). As such, a hearing examiner's "determination is limited to an administrative proceeding to determine whether or not a particular

piece of property is subject to a county land ordinance." *Chaussee v. Snohomish Cty. Council*, 38 Wn. App. 630, 638, 689 P.2d 1084 (1984).

The hearing examiner reviewing a PALS order or decision may not rule on constitutional issues. *See Exendine v. City of Sammamish*, 127 Wn. App. 574, 586-87, 113 P.3d 494 (2005); *Open Door Baptist Church v. Clark County*, 140 Wn.2d 143, 146, 995 P.2d 33 (2000). An administrative agency has no authority to determine whether the statute it administers is facially constitutional or constitutional as applied. *See Exendine*, 127 Wn. App. at 586-87 (city council has no power to enforce, interpret, or rule on constitutional issues and therefore cannot delegate such power to hearing examiner). Only the judiciary may resolve constitutional questions. *See Prisk v. Poulsbo*, 46 Wn. App. 793, 798, 732 P.2d 1013 (1987) (when the issue raised is the constitutionality of the law sought to be enforced, only the courts have the power to decide). Accordingly, the Hearing Examiner properly declined to rule on constitutional issues.

## B. PROCEDURAL DUE PROCESS

Dotson argues that the County denied her procedural due process rights as a property owner to be heard at a meaningful time on the 2007 habitat assessment. She contends that she has a property interest in the "ability to engage in mundane gardening activities and boarding her pet at home without erroneous penalties being assessed." Opening Br. of Appellant at 35. This argument is rejected.

### 1. LEGAL PRINCIPLES

We review constitutional issues in administrative appeals de novo. *Phoenix Dev., Inc.*, 171 Wn.2d at 828. The Fourteenth Amendment prohibits states from depriving any person of life, liberty, or property without due process of law. U.S. CONST. amend. XIV, § 1. "When a state

seeks to deprive a person of a protected interest, procedural due process requires that an individual receive notice of the deprivation and an opportunity to be heard to guard against erroneous deprivation." *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 216, 143 P.3d 571 (2006). To determine whether existing procedures adequately safeguard a protected property interest, courts consider "(1) the potentially affected interest; (2) the risk of an erroneous deprivation of that interest through the challenged procedures, and probable value of additional procedural safeguards; and (3) the government's interest, including the potential burden of additional procedures." *City of Bellevue v. Lee*, 166 Wn.2d 581, 585, 210 P.3d 1011 (2009).

2.     NOTICE AND A MEANINGFUL OPPORTUNITY TO BE HEARD

Even assuming without deciding that Dotson has shown a requisite property interest and a risk of erroneous deprivation, her due process argument still fails. Dotson argues that the County denied her procedural due process rights as a property owner to be heard at a meaningful time on the 2007 habitat assessment. We disagree.

Neither LUPA nor the PCC provides for individualized notice of fish and wildlife habitat area assessments of a specific parcel to the owners of adjacent parcels. *See Asche v. Bloomquist*, 132 Wn. App. 784, 796, 133 P.3d 475 (2006); PCC 18E.40.030(B)(3). Adjacent property owners are not entitled to notice of fish and wildlife habitat area review applications, public hearings, or final decisions under PCC 18.80.020.[7]

Here, however, Dotson received due process: she was given notice of the violation and had an opportunity to be heard before the Hearing Examiner. At the hearing, Dotson had the

---

[7] PCC 18.80.020 provides a matrix of the notice required for applications, public hearings, and any final decisions under Title 18E PCC. *See* PCC 18E.10.070(C), (F)(1)(a).

opportunity to challenge the 2007 assessment and its applicability to her property. Thus, Dotson has failed to show that she did not receive the required notice and opportunity to be heard. We hold that the Hearing Examiner's decision did not violate Dotson's constitutional right to procedural due process.

### C. RIGHT TO PRIVACY AND FREEDOM FROM UNREASONABLE SEARCHES

Dotson next contends that the County obtained evidence in violation of her federal and state constitutional rights to privacy. We do not reach this argument because even without considering the challenged evidence, there is sufficient evidence to support the Hearing Examiner's findings and conclusions regarding the violation.

Even if we exclude Van Haren's observations from the private road and PALS' staff report Ex. 5A (photo of the paddock, stall, and horse taken from the private road), there is still substantial evidence that Dotson violated Title 18E PCC. The citizen-initiated complaint stated that Dotson built a fence, corral, and feeder for animals on her property. Before the October 15 site visit, Van Haren utilized aerial photographs, orthophotographs, planimetrics, and GIS photographs that she obtained before the site visit to confirm Dotson's violation of the PCC. During the site visit, from the public road, Van Haren confirmed the presence of the hydro center line, a culvert, and natural water that is a fish and wildlife habitat area indicator. Further, the 2007 habitat assessment classified the stream running through Dotson's property and the adjacent, upstream property as an F1 stream type.

Finally, in Dotson's signed application materials, she acknowledged (1) the PCC violation of having a horse in a fish and wildlife habitat on her property, (2) the horse and paddock were within a critical area buffer, and (3) an unnamed seasonal tributary to S. Fork Muck Creek was on

the property. Dotson also signed an agreement with the PCD acknowledging that the paddock, shelter, and horse were on an F1 seasonal stream located on Dotson's property. Dotson also attached an aerial photo of part of her property to her application.

Thus, even excluding the challenged evidence, substantial evidence supports the Hearing Examiner's findings and conclusions. Thus, we need not address Dotson's right to privacy arguments.

## IV. SETTLEMENT AGREEMENT

Dotson argues that the parties never finalized a settlement agreement and, in the alternative, the County did not prove that Dotson knowingly entered into a settlement agreement. We agree with Dotson. There is no evidence that the parties finalized a binding settlement agreement. Dotson never signed and returned the approval documents. There is not substantial evidence supporting the Hearing Examiner's conclusion that Dotson breached such an agreement. Accordingly, the Hearing Examiner erred in this regard.

## V. CONCLUSION

In sum, Dotson primarily argues that without the evidence she challenges, there was not substantial evidence that she violated Title 18E PCC. We disagree.

Here, Dotson argues that there was not substantial evidence of the violation if the evidence she challenged was inadmissible. As stated above, even excluding all of the challenged evidence,

we hold that Dotson has failed to prove that the Hearing Examiner's decision that she violated Title 18E PCC lacked substantial admissible evidence. Accordingly, the Hearing Examiner did not err.

## VI. ATTORNEY FEES

Dotson requests attorney fees and costs. The County also requests costs and fees in the event it prevails under RCW 4.84.370(2) and *Bellevue Farm Owners Association v. Shorelines Hearings Board*, 100 Wn. App. 341, 365-66, 997 P.2d 380 (2000).

RCW 4.84.370(1)(b) provides that reasonable attorney fees and costs shall be awarded to the prevailing party or substantially prevailing party on appeal of a decision by a county on a land use approval or decision if the prevailing party on appeal was the prevailing party or substantially prevailing party in all prior judicial proceedings. *See also Bellevue Farm Owners Ass'n*, 100 Wn. App. at 365-66 ("RCW 4.84.370 allows attorney fees and costs to the prevailing parties if they prevailed in all prior judicial proceedings.").

RCW 4.84.370(2) provides that "[i]n addition to the prevailing party under subsection (1) of this section, the county, city, or town whose decision is on appeal is considered a prevailing party if its decision is upheld at superior court and on appeal."

Because Dotson is not the prevailing party, her request for costs and fees is denied. And under RCW 4.84.370(2), because the County prevails on appeal, we award the County reasonable costs and fees

25

No. 50860-5-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

WORSWICK, P.J.

BJORGEN, J.